
# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 68444-2-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| PETER JAMES GREEN, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: October 28, 2013 |

SPEARMAN, A.C.J. — Peter Green hit a pedestrian while driving his car and was arrested for suspected driving under the influence. After his arrest, police conducted a warrantless search of his car and found a number of receipts that were later determined to be evidence of purchases using stolen credit card numbers. Under State v. Snapp, 174 Wn.2d 177, 275 P.3d 289 (2012), the receipts were not admissible in his trial for identify theft and theft as the product of a vehicle search incident to arrest. The issue before us is whether the receipts were nonetheless admissible either (1) as the product of a lawful inventory search or (2) under the independent source doctrine. We hold that the scope of the inventory search did not extend to the police officer's seizure of the receipts. We also hold that the receipts were not admissible under the independent source doctrine because they were seized during the initial warrantless search and were

not found through an independent source. The trial court's denial of Green's suppression motion was error. We reverse and remand.

## FACTS

Around 10:00 p.m. on January 4, 2008, Peter Green was driving his Jeep Cherokee when he collided with a pedestrian, who died soon afterward. Seattle Police Department (SPD) officers arrived at the scene and took a statement from Green. Suspecting him of driving under the influence, they arrested him and transported him to a hospital for a blood draw.

Green's car was towed to the SPD storage facility that night. Before it was towed, Detective Thomas Bacon searched the car. In the rear cargo area, Bacon found a new television inside its carton. He looked inside a paper bag on the front passenger floor and found two receipts. Removing them from the bag, he examined the receipts and observed that they were for purchases made that day at two Sears stores. One receipt was for the purchase of a television with three $500 Sears gift cards at the Redmond Sears. The other was for disposable cell phones purchased at the Sears in downtown Seattle with a Sears gift card. Bacon also found a plastic Sears bag containing two disposable cell phones. It was suspicious to him that the receipts showed the television and phones had been purchased with large denomination gift cards at two different stores. He seized the receipts and phones.

Bacon began conducting parallel investigations for vehicular homicide and theft/fraud. He contacted the Redmond Sears and discovered that the three $500

gift cards had been purchased in Portland, Oregon, along with another $1,500 in gift cards. The credit card number used to purchase the gift cards belonged to Laurie Johnson, who had not authorized the purchases. Other unauthorized purchases of Sears gift cards had been made using the credit card of Richard Burnett.

On January 30, Bacon obtained a warrant to search Green's car for evidence in the vehicular homicide investigation. His affidavit referenced his initial search but did not mention what he discovered. The warrant authorized a search of the car for evidence of drug and alcohol use, "papers of dominion and control," and evidence relating to the identity of an unknown male passenger seen leaving the car immediately after the collision.[1] Clerk's Papers (CP) at 76. While executing the search warrant on January 31, Bacon found a backpack in the back seat. Inside the backpack, he found five credit cards, all with the name Jeanne Russell. Bacon looked at the front and back of the credit cards. While the cards appeared to be fraudulent because they had no security codes, Bacon believed he could not seize them under the warrant. He replaced the cards in the backpack and left the backpack in the car.

On February 8, Bacon obtained a second warrant to search the car for evidence related to fraud or identity theft. His affidavit summarized his initial search and his search under the first warrant. It included details about Green's

---

[1] Witnesses stated weeks after the accident that an unknown male passenger had walked away from the scene. This person was never identified.

3

prior criminal history; Green had previously been convicted of identity theft after attempting to use a fraudulently obtained credit card to buy a television at Sears. He was also a person of interest in a separate fraud investigation. After seizing the five credit cards under the second warrant, Bacon determined that the cards with Russell's name did not belong to a person by that name. Three of the credit card numbers belonged to Moretha Harding, Natasha Koterly, and Hoang Dang, all of whom lived outside of Washington.[2] Bacon learned that Johnson, Burnett, Harding, Koterly, and Dang had all purchased airline tickets from Northwest Airlines, where Green worked.

The State charged Green with theft in the second degree (Count V: theft of television) and five counts of identity theft in the second degree (Count I: victim Johnson; Count II: victim Harding; Count III: victim Koterly; Count IV: victim Dang; Count VI: victim Burnett).[3] At trial, the State introduced evidence of the credit cards and receipts and evidence that the television had been purchased with gift cards Green had bought with Johnson's credit card number. Green's former manager at Northwest Airlines testified that his job gave him access to customers' credit card numbers. Northwest's computer records showed Green had accessed the victims' credit card information. The parties stipulated that the

---

[2] The other two credit card numbers were fake.

[3] The State also charged Green with driving while under the influence, which was severed for trial. Green was acquitted of that charge.

out-of-state victims[4] did not know Green or give him permission to use their credit card information. The jury convicted Green as charged.

In Green's first appeal, he challenged in pertinent part the initial warrantless search of his car under Arizona v. Gant, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), which had not been decided before trial. The United States Supreme Court held in Gant that police may search a vehicle incident to a recent occupant's arrest only if (1) the arrestee is within reaching distance of the passenger compartment at the time of the search or (2) it is reasonable to believe the vehicle contains evidence of the crime of arrest. Id. at 351. Absent these justifications, a vehicle search is unreasonable unless police obtain a warrant or another exception to the warrant requirement applies. Id. This court, in an unpublished opinion, remanded for a hearing on the impact of Gant on the initial search. State v. Green, 162 Wn. App. 1069, 2011 WL 3244724 (2011).

On remand, the State argued the evidence found in the warrantless search was admissible (1) under Gant, because Bacon was looking for evidence of the crime of arrest; (2) as the product of an inventory search; and (3) under the independent source doctrine. Bacon testified at the remand hearing. The trial court denied the motion to suppress. It found that Bacon's warrantless search was made for both inventory and investigatory purposes but that the receipts specifically were found only as part of the investigatory search incident to

---

[4] Johnson, Harding, Koterly, Dang, and Burnett.

Green's arrest. It ruled that the warrantless search and the seizure of the receipts was valid under Gant and State v. Patton, 167 Wn.2d 379, 394-95, 219 P.3d 651 (2009) (vehicle search incident to recent occupant's arrest is unlawful unless, at time of search, there is reasonable basis to believe arrestee poses safety risk or that vehicle contains evidence of crime of arrest that could be concealed or destroyed). It did not rule on the independent source doctrine.

Subsequently, the Washington Supreme Court held that article I, section 7 of the Washington State Constitution does not permit a warrantless vehicle search incident to arrest based on a belief that evidence of the crime of arrest might be found in the vehicle.[5] Snapp, 174 Wn.2d at 190-91. Green now appeals the trial court's ruling on remand in light of Snapp.

## DISCUSSION

We review a trial court's denial of a motion to suppress to determine whether substantial evidence supports the challenged factual findings and, if so, whether factual findings support the conclusions of law. State v. Garvin, 166 Wn.2d 242, 249, 207 P.2d 1266 (2008). Conclusions of law are reviewed de novo. State v. Winterstein, 167 Wn.2d 620, 628, 220 P.3d 1226 (2009).

---

[5] The court explained:

Contrary to the urgency attending the search incident to arrest to preserve officer safety and prevent destruction or concealment of evidence, there is no similar necessity associated with a warrantless search based upon either a reasonable belief or probable cause to believe that evidence of the crime of arrest is in the vehicle.

Snapp, 174 Wn.2d at 195-96.

Under the Fourth Amendment to the United States Constitution[6] and article I, section 7 of the Washington State Constitution, warrantless searches and seizures are per se unreasonable, with few exceptions. Gant, 556 U.S. at 338-39; Snapp, 174 Wn.2d at 187-88. The State must show that an exception to the warrant requirement applies by clear and convincing evidence. State v. Garvin, 166 Wn.2d 242, 250, 207 P.3d 1266 (2009).

Only the admission of the receipts is at issue. The State concedes the receipts are not admissible under Snapp as the product of a vehicle search incident to arrest. The concession is well taken. The State contends the receipts are nonetheless admissible (1) as the product of an inventory search and (2) under the independent source doctrine. We address the contentions in turn.

Inventory Search

One exception to the warrant requirement is an inventory search accompanying a lawful vehicle impound. State v. Ladson, 138 Wn.2d 343, 349, 979 P.2d 833 (1999); State v. White, 135 Wn.2d 761, 769-70, 958 P.2d 982 (1998). The principal purposes of an inventory search are to (1) protect the vehicle owner's property; (2) protect the police against false claims of theft by the owner; and (3) protect the police from potential danger. White, 135 Wn.2d at 769-70 (citing State v. Houser, 95 Wn.2d 143, 154, 622 P.2d 1218 (1980)). The direction and scope of an inventory search "must be limited to the purpose

---

[6] The Fourth Amendment applies to the states through the Fourteenth Amendment. U.S. Const. Amend. XIV; Mapp v. Ohio, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

justifying the exception: finding, listing, and securing from loss during detention the property of the person detained, and protection of police and bailees from liability due to dishonest claims of theft." Ladson, 138 Wn.2d at 372.

Here, the trial court made the unchallenged determinations that the impoundment was lawful and that Bacon had an investigatory purpose and an inventory purpose in conducting the initial warrantless search. The court further concluded:[7]

> The purposes of an inventory search pursuant to vehicle impound are to protect the owner's property and the police department from false claims of theft, and to remove potentially dangerous property for the safety of others. The receipts found in the paper bag were not part of the inventory search, but the investigatory search incident to the defendant's arrest.

CP at 209-10.

The State contends this conclusion was error.[8] It argues that because Bacon properly looked inside the bag pursuant to the inventory search, anything he found therein was properly seized. In support of this proposition, the State relies on State v. Montague, 73 Wn.2d 381, 438 P.2d 571 (1968), but that case is distinguishable.

---

[7] While the trial court labeled this conclusion as a finding of fact, we agree with the State that it is more appropriately reviewed as a conclusion of law that the scope of the inventory search did not extend to the examination of the receipts. Conclusions of law mislabeled as findings of fact are reviewed as conclusions of law. Willener v. Sweeting, 107 Wn.2d 388, 394, 730 P.2d 45 (1986).

[8] Green contends the State waived any argument that the receipts were discovered during an inventory search because it did not cross appeal the trial court's determination that the receipts were not part of the inventory search. We disagree. Because the State is not requesting affirmative relief, it may argue any grounds supported by the record to sustain the trial court's order. State v. Bobic, 140 Wn.2d 250, 257, 996 P.2d 610 (2000) (citing RAP 2.4(a); 5.1(d)).

In <u>Montague</u>, the defendant, Robert Montague, was driving a car at night with only one headlight. <u>Id.</u> at 382. When he was stopped by a police officer he was unable to produce a valid driver's license or registration for the car. <u>Id.</u> at 382-83. Montague was placed under arrest and, pursuant to police procedure, the car was impounded. <u>Id.</u> at 383. Prior to impoundment, police procedure required the car to be searched for valuables and any valuables found to be listed on a property card. <u>Id.</u> While conducting the search, the officer examined a brown paper bag on the floor of the car and found it contained eight small plastic bags filled with what appeared to be marijuana. <u>Id.</u> Montague's motion to suppress the marijuana was denied and he was convicted of unlawful possession of the substance. <u>Id.</u> at 382-83. On appeal, the Washington Supreme Court affirmed the conviction, stating:

> When . . . the facts indicate a lawful arrest, followed by an inventory of the contents of the automobile preparatory to or following the impoundment of the car, and there is found to be reasonable and proper justification for such impoundment, and where the search is not made as a general exploratory search for the purpose of finding evidence of a crime but is made for the justifiable purpose of finding, listing, and securing from loss, during the arrested person's detention, property belonging to him, then we have no hesitancy in declaring such inventory reasonable and lawful, and evidence of crime found will not be suppressed.

<u>Id.</u> at 385. Thus, in <u>Montague</u>, the officer, while conducting a lawful inventory search, properly looked into the paper bag, recognized the marijuana as evidence of a crime, and lawfully seized it. That is not the circumstance presented here.

9

In this case, Bacon did not recognize the receipts as either items subject to inventory or as evidence of a crime. While he properly looked inside the bag to determine whether it contained anything of value, Bacon testified that he did not consider the receipts to be relevant to his inventory search and there is no evidence that he did, in fact, inventory them. Bacon also candidly admitted that his seizure of the receipts was for investigatory purposes and that he "really didn't know at that point" whether the receipts were evidence of any criminal activity. Verbatim Report of Proceedings (VRP) (1/6/2012) at 40-41. Thus, the record supports the trial court's determination that the seizure of the receipts exceeded the lawful scope of the inventory search and became an investigatory search, unsupported by any exception to the warrant requirement. We affirm the trial court's ruling that the receipts were not admissible under the inventory search exception.

<u>Independent Source Doctrine</u>

Where police seize evidence pursuant to an unlawful search, the exclusionary rule prohibits introduction of the evidence seized. Murray v. United States, 487 U.S. 533, 536-37, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988); State v. O'Bremski, 70 Wn.2d 425, 428, 423 P.2d 530 (1967). The rule also prohibits the admission of evidence that is the product of the unlawfully acquired evidence, "up to the point at which the connection with the unlawful search becomes so attenuated as to dissipate the taint." Murray, 487 U.S. at 536-37 (internal quotation marks and citation omitted). Under the independent source exception,

10

however, "evidence tainted by unlawful governmental action is not subject to suppression under the exclusionary rule, provided that it ultimately is obtained pursuant to a valid warrant or other lawful means independent of the unlawful action." State v. Gaines, 154 Wn.2d 711, 718, 116 P.3d 993 (2005). The Washington Supreme Court has explained, "This result is logical. According to the plain text of article I, section 7, a search or seizure is improper only if it is executed without 'authority of law.' But a lawfully issued search warrant provides such authority." Id.

The independent source doctrine differs from the inevitable discovery doctrine, which Washington does not recognize. Winterstein, 167 Wn.2d at 636 (inevitable discovery doctrine incompatible with article I, section 7); State v. O'Neill, 148 Wn.2d 564, 592, 62 P.3d 489 (2003) (inevitable discovery exception would create no incentive for State to comply with article I, section 7). While the independent source doctrine recognizes that probable cause may still exist based on legally obtained information after excluding the illegally obtained information, the inevitable discovery doctrine is speculative and does not disregard illegally obtained evidence. State v. Afana, 169 Wn.2d 169, 181, 233 P.3d 879 (2010). We have stated:

> Whereas the inevitable discovery doctrine requires a speculative analysis of whether the police would have ultimately obtained the same evidence by other lawful means, the independent source exception contains no similar speculative considerations. Rather than considering whether the police would have found the same evidence by lawful means, the independent sources exception

requires considering if evidence is tainted by earlier unlawful government actions.

State v. Smith, 165 Wn. App. 296, 310, 266 P.3d 250 (2011) (internal citation omitted) (rev. granted, 173 Wn.2d 1034, 277 P.3d 669 (2012)).[9]

We hold that the receipts are not admissible under the independent source doctrine. Neither the receipts nor knowledge of them were in fact found through an independent source. The receipts were not found while executing the first search warrant; the State only contends they would have been had they not been seized during the initial search. But the State's argument requires this court to engage in the inevitable discovery doctrine's "speculative analysis of whether the police would have ultimately obtained the same evidence by other lawful means. . . ." Smith, 165 Wn. App. at 310.

The State relies primarily on a Third Circuit Court of Appeals decision, United States v. Herrold, 962 F.2d 1131 (3d Cir.) to support the proposition that even evidence unlawfully seized and kept in police custody (in Herrold, a loaded

---

[9] The United States Supreme Court has described the inevitable discovery doctrine as "an extrapolation from the independent source doctrine: Since the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered." Murray, 487 U.S. at 539.

gun) may, nonetheless, be admissible under the independent source exception.[10]

The State also cites a Seventh Circuit decision, United States v. May, 214 F.3d

900 (7th Cir.) (2000), noting that there, evidence of cash was properly admitted

under the independent source doctrine where the cash had been illegally seized

but a valid search warrant issued the following day gave an independent basis

for its seizure.[11]

---

[10] In Herrold, police officers made an initial unlawful entry into a trailer and saw drugs and a loaded gun in plain view. Herrold, 962 F.2d at 1134. They waited for a search warrant to seize the drugs but apparently seized the gun during the initial entry. Id. at 1134-35. The search warrant affidavit included observations of the gun and drugs inside the trailer. Id. at 1135. They executed a search warrant later that night and seized the drugs. Id. The Third Circuit held that the drugs and gun were admissible under the independent source doctrine because, even excluding information obtained during the initial entry, the warrant was still supported by probable cause. Id. at 1140-44. The court concluded that although the gun was seized during the illegal entry, it should be treated as seized under the search warrant, which specifically authorized the seizure of firearms. Id. at 1143. The court stated:

> It would be dangerous to require officers to leave a fully-loaded, semi-automatic weapon unsecured until they obtained a warrant, and senseless to require the formality of physically re-seizing the gun already seized during the initial entry. Thus, the only logical implication under Murray is that the gun is as admissible under the independent source doctrine as the other, non-dangerous evidence, seen during the initial entry but not seized until the warrant-authorized search.

Id.

[11] In May, defendants Terry and May were under investigation for bank robbery and an unrelated drug matter. May, 214 F.3d at 902-03. Police officers seized cash from their residence while serving a state search warrant for the drug matter. Id. at 903. The next day, based on statements of the defendants' roommate, officers obtained a federal search warrant that "authorized the search of the shed behind [the defendants'] house, but also the money seized in the initial search . . . ." Id. at 903 n.9. In the bank robbery trial, they sought to suppress the cash on the basis that the state search warrant did not authorize the seizure of the money because the warrant authorized the seizure of money "found in close proximity to" drugs and drug paraphernalia but the latter items were not found during the search. The trial court found that the officers investigating the bank robbery would have sought the federal search warrant even if the cash had not been seized. Id. at 904. On appeal, the defendants argued that the cash should be suppressed because the federal search warrant was a "direct result" of the illegal seizure of the cash. Id. at 905. The Seventh Circuit agreed with the trial court that the officers would have sought and obtained a federal search warrant absent any reference to the initial discovery of the cash, giving an independent source for the seizure of the money. Id. at 906-07.

The State contends that, like the gun in Herrold and the cash in May, the receipts are untainted by the warrantless search because the first search warrant provided an independent source for them. It contends that because Bacon sought the warrant to further the vehicular homicide investigation, he would have sought the first warrant even had he not conducted the initial warrantless search.

Herrold and May, however, are distinguishable. The valid warrants in Herrold and May specifically authorized the search and seizure of the evidence at issue (the gun and cash), providing a clear independent source to seek and seize the evidence. Here, in contrast, the State seeks to have the independent source doctrine apply on the basis of the first search warrant, which did not specifically seek receipts in connection with a fraud investigation but rather authorized the search and seizure of evidence related to vehicular homicide.

Furthermore, the State's contention that the first warrant provides an independent source for the receipts requires speculation that the officers would have looked in the paper bag, while carrying out the first search warrant, examined the receipts, and become suspicious that they were evidence of another crime while seeking evidence of the vehicular homicide.[12] In sum, the connection between the receipts and the first search warrant is attenuated and

---

[12] Green challenges the trial court's finding that had Bacon not seized the receipts during the warrantless search, he would have found the receipts inside the paper bag during his search pursuant to the first warrant. Regardless of whether this finding is supported by substantial evidence, it does not support the conclusion that the search is admissible under the independent source doctrine because it is the type of speculative finding that, as we have explained, is not permitted by the independent source doctrine.

speculative, unlike in <u>Herrold</u> and <u>May</u>. We agree with Green that what the State actually asks us to apply here is the inevitable discovery doctrine.

We reverse the trial court's ruling on the suppression motion and remand for further proceedings.

Reversed and remanded.

WE CONCUR:

_Spearman, A.C.J._

_Appelwick, J_

_Becker, J._