# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47425-5-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JEFFREY JEROME JOHNSON, | |
| Appellant. | |

MAXA, J. – Jeffrey Johnson appeals his conviction of unlawful possession of methamphetamine with intent to deliver. He argues that the trial court erred in denying his motion to suppress evidence officers discovered after he consented to their search of his home.

We hold that substantial evidence supports the trial court's finding of fact that the police officers gave proper *Ferrier*[1] warnings to Johnson before entering his barn to speak with him and that Johnson voluntarily consented to the search of his trailer inside the barn. We also reject Johnson's assertions made in his statement of additional grounds (SAG). Therefore, we affirm Johnson's convictions.

---

[1] *State v. Ferrier*, 136 Wn.2d 103, 118, 960 P.2d 927 (1998).

FACTS

On January 22, 2014, City of Centralia police officers Adam Haggerty and Chad Withrow and Lewis County Sheriff's Deputy Bruce Kimsey went to Johnson's home in Vader to conduct a "knock and talk"[2] with Johnson based on information they had received that Johnson was selling methamphetamine from his home. Johnson lived in a trailer parked inside a barn, adjacent to a house. When Haggerty and Withrow arrived at Johnson's residence, they parked their unmarked vehicle outside the barn in front of a security camera and turned their music up loud hoping to alert Johnson. Kimsey arrived in his own patrol vehicle.

When Johnson did not come out, Haggerty and Withrow "approached the garage and were able to summon Johnson from within." Clerk's Papers (CP) at 29. Johnson then came outside and the officers explained why they were there. Haggerty told Johnson that he wanted to know Johnson's source for the methamphetamine he had sold and that if he cooperated, Johnson would sleep in his own bed that night. Johnson agreed to cooperate. After Kimsey left to investigate another matter, Haggerty asked Johnson about his methamphetamine and Johnson replied that he had about two ounces, a digital scale, and some packaging materials.

Haggerty then presented Johnson with a consent to search form that contained *Ferrier* warnings. Haggerty verbally summarized the warnings rather than read them verbatim and had Johnson read the form himself. Johnson read the form without comment and verbally consented.

---

[2] During a knock and talk, officers go to a home without a warrant and ask for the resident's consent to search the premises. *State v. Budd*, No. 91529-6, 2016 WL 2910207, at *3 (Wash. May 19, 2016).

He then signed the form before the officers entered the barn and trailer. Kimsey returned to the scene at about the same time.

Haggerty seized methamphetamine, a digital scale, and packaging materials from inside the trailer. The State later charged Johnson with unlawful possession of methamphetamine with intent to manufacture or deliver.

Johnson filed a motion under CrR 3.6 to suppress the evidence that officers discovered in the search of his trailer, arguing that the advisement of the *Ferrier* warnings was insufficient. The trial court conducted a suppression hearing and heard testimony from the three officers, Johnson, Melissa Alderman, who lived in a residence adjacent to the barn, and Alderman's daughter Jessica Hamilton. The trial court entered findings of fact and conclusions of law, finding that the officers talked with Johnson outside the barn and gave *Ferrier* warnings to Johnson and that Johnson's consent was knowing, intelligent, and voluntary. Therefore, the trial court denied Johnson's CrR 3.6 motion to suppress.

Johnson waived his right to a jury trial, and the trial court found Johnson guilty of unlawful possession of methamphetamine with intent to deliver based on a stipulation to the facts in the police report. Johnson appeals his conviction.

ANALYSIS

A.    MOTION TO SUPPRESS – *FERRIER* WARNINGS

1.    Legal Principles

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution prohibit warrantless searches unless an exception applies. *State v. Weller*, 185 Wn. App. 913, 922, 344 P.3d 695, *review denied*, 183 Wn.2d 1010 (2015). The

State has the burden of showing that an exception to the warrant requirement applies by clear and convincing evidence. *State v. Green*, 177 Wn. App. 332, 340, 312 P.3d 669 (2013).

One exception to the warrant requirement is when the police obtain voluntary consent while conducting a knock and talk. *State v. Khounvichai*, 149 Wn.2d 557, 562, 69 P.3d 862 (2003). When the police use this procedure, they must inform the resident of his constitutional rights by giving what are commonly referred to as *Ferrier* warnings: that he may lawfully refuse to give consent, revoke that consent at any time, and limit the scope of that consent to particular areas of the residence. *State v. Ferrier*, 136 Wn.2d 103, 118, 960 P.2d 927 (1998). Significantly, the officers must give these warnings before entering the home. *State v. Budd*, No. 91529-6, 2016 WL 2910207, at *3 (Wash. May 19, 2016).

Even if officers properly provide *Ferrier* warnings before conducting a search, the State still must show that the defendant's consent to search was voluntary. *State v. Monaghan*, 165 Wn. App. 782, 789, 266 P.3d 222 (2012). For consent to be valid, a person with authority to consent must do so freely and voluntarily. *Id.*

2.   Standard of Review

When reviewing a trial court's findings of fact and conclusions of law on a motion to suppress evidence, we determine whether substantial evidence supports the findings of fact and whether those findings of fact support the conclusions of law. *State v. Russell*, 180 Wn.2d 860, 866, 330 P.3d 151 (2014). Substantial evidence is evidence that is sufficient to persuade a fair-minded person of the truth of the stated premise. *Id.* at 866-67. We treat unchallenged findings of fact from a suppression hearing as verities on appeal. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). We review conclusions of law de novo. *Id.* at 867.

3.    Providing *Ferrier* Warnings Before Entering the Barn

Johnson claims that the State failed to prove with clear and convincing evidence that the

police gave him *Ferrier* warnings before they entered the barn.  We disagree.

a.    Failure to Enter Express Finding

Johnson argues that the trial court did not enter a finding of fact expressly stating that the

officers gave Johnson the *Ferrier* warnings before entering the barn.  He claims that without

such an express finding, the State cannot satisfy its burden of proving that the officers gave the

*Ferrier* warnings before entering the barn.

The trial court entered the following findings of fact that relate to whether the officers

entered the barn before they gave the *Ferrier* warnings:

> 6.  When nobody responded to their presence, Officers Haggerty and Withrow approached the garage and were able to summon Johnson from within.
>
> 7.  Johnson was asked to step outside, which he complied.  While outside the barn, Johnson was informed of why law enforcement was contacting him.
> . . . .
>
> 15.  . . . .  The Ferrier warnings were reviewed with Johnson, and consent was granted while outside the trailer and barn area.
> . . . .
>
> 18.  Once permission was granted, Officer Haggerty and Withrow, along with Johnson entered the barn area.

CP at 29-30.

Finding of fact 6 states that the officers "approached" the garage.  CP at 29.  Approaching

the garage is different than entering it, and use of that word indicates that the officers did not go

into the barn.  Finding of fact 6 also states that the officers summoned Johnson "from within,"

CP at 29, and finding of fact 7 states that Johnson was asked to step outside the barn.  These

5

findings indicate that Johnson was inside the barn and the officers drew him outside with them. Finally, finding of fact 18 states that the officers entered the barn after permission was granted. This finding implies that they had not entered the barn before speaking with Johnson.

The trial court's findings could have been more explicit. But we hold that these findings are sufficient to establish that the officers did not enter the barn until after they gave Johnson the *Ferrier* warnings.

b.    Substantial Evidence

Johnson assigns error to finding of fact 6 to the extent that it suggests that the officers did not enter the barn until they had provided Ferrier warnings. He argues that there was conflicting testimony at the suppression hearing about whether the officers entered the barn when they were calling for Johnson to come out.

Johnson is correct that some witnesses testified that officers entered the barn before providing *Ferrier* warnings. Johnson himself testified that the officers walked into and through the barn before contacting him. Haggerty testified that the officers walked into the barn before yelling for Johnson. Hamilton testified that she saw the officers get out of their vehicle and enter the barn through the tack room.

However, the other two officers testified that nobody went inside the barn before *Ferrier* warnings were given. Withrow testified that they contacted Johnson outside the barn. He said they knocked on the door and asked him to come out. During cross examination, defense counsel asked Withrow, "So if you didn't go into the barn, how did you get Mr. Johnson out?" Report of Proceedings (RP) (3/19/2015) at 38. Withrow responded, "Knocked on the outside and asked and he just came out." RP (3/19/2015) at 38. Kimsey explained that the officers

6

called out to Johnson as they were approaching the barn and Johnson came out. Defense counsel

asked during cross-examination whether the officers went into the barn and Kimsey responded,

"No, not that I saw. . . . I remember him coming out to the doors of the barn." RP (3/19/2015) at

52.

As noted above, we examine challenged findings of fact to determine if substantial

evidence in the record supports them. *Russell*, 180 Wn.2d at 866. Here, Withrow's and

Kimsey's testimony supported finding of fact 6. Although there was conflicting testimony, the

trial court considered all the testimony and entered finding of fact 6.[3] We do not second guess

the trial court's resolution of conflicts in the evidence. *See Homan*, 181 Wn.2d at 106.

We hold that substantial evidence supported the trial court's finding of fact that the

officers did not enter the barn until after they had given Johnson the *Ferrier* warnings.

3.    Voluntary Consent

Johnson argues that the trial court erred in finding that he voluntarily consented to the

search of his trailer. He argues that the surrounding circumstances were too coercive to support

such a finding. We disagree.

The trial court entered a conclusion of law that Johnson's consent to search was

voluntary. We employ a totality of the circumstances test to determine whether a defendant

voluntarily consented. *State v. Ruem*, 179 Wn.2d 195, 207, 313 P.3d 1156 (2013). We consider

---

[3] At the sentencing hearing, Johnson objected to finding of fact 6, stating: "We had mixed testimony, one where they went in and got him, one where they said they stayed out and he came to them." RP (4/1/2015) at 6. The trial court responded, "Well, just because there was conflicting testimony, that doesn't mean that the Court can't make a finding. That's what the Court does." RP (4/1/2015) at 6.

(1) the education and intelligence of the consenting person; (2) whether *Miranda*[4] warnings, if applicable, were given prior to consent; and (3) whether the consenting person was advised of his right not to consent. *Id.* Although these three factors are essential to the consent analysis, no single factor is determinative and we consider other relevant facts such as coercive tactics. *State v. Dancer*, 174 Wn. App. 666, 676, 300 P.3d 475 (2013).

Here, the *Ruem* factors were met. First, Johnson had a 12th grade education and Haggerty presumably assumed from this that Johnson could read and write. While it appeared to Haggerty that it took Johnson longer than usual to read the consent form, Johnson gave no indication that he could not read it or understand it. Second, Haggerty did not give *Miranda* warnings because they were not applicable as Johnson was not under arrest. And third, Haggerty informed Johnson both in writing and verbally that he had the right to refuse consent.

Johnson argues that the other circumstances were coercive. He notes that it was a dark night, multiple officers approached the barn, and the officers were persistent even though he indicated his preference to be left alone. He claims the officers made a thinly veiled threat to arrest and jail him by stating that if he cooperated, he could sleep in his own bed that night. And he argues that the threat involved deception because in actuality the officers were out of their primary jurisdiction and lacked authority to arrest him.

We disagree that these facts undermine the voluntariness of Johnson's consent. Although Johnson was approached by three officers, the trial court found that Haggerty was the only officer communicating directly with Johnson. Withrow remained in the background as did Kimsey, who had left the scene during the time Johnson consented. Further, there was ample

---

[4] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

testimony that the situation was not coercive. Haggerty, Withrow, and Kimsey testified that the conversations with Johnson were low-key, casual, cordial, and not threatening. Finally, given the tone of the communications, we do not regard Haggerty's statement about sleeping in his own bed that night as a threat that could unlawfully coerce Johnson into consenting to a search. *See State v. Trout*, 125 Wn. App. 403, 414-16, 105 P.3d 69 (2005) (implied promise of lenient treatment did not render confession involuntary).

We hold that substantial evidence supports the trial court's finding that Johnson freely, intelligently, and voluntarily consented to the search of his trailer.

B.      SAG ASSERTIONS

Johnson makes two assertions of error in his SAG. First, Johnson asserts that the two Centralia officers had no jurisdiction in rural Cowlitz County to obtain his consent to search because Kimsey had left the scene when he signed the consent form. We disagree.

Johnson did not challenge the police officers' authority to obtain his consent below. Therefore, the record is inadequate to determine whether the officers acted lawfully under Title 10.93 RCW or some other mutual agency agreement. Generally, a party's failure to raise an issue at trial waives the issue on appeal unless the party can show the presence of a manifest error affecting a constitutional right. *State v. Robinson*, 171 Wn.2d 292, 304, 253 P.3d 84 (2011); RAP 2.5(a). Johnson neither preserved this claim nor makes an adequate showing of manifest constitutional error. Therefore, we do not address this assertion.

Second, Johnson asserts that when an officer conducts a knock and talk, it is unlawful to enter any areas of the property other than the residence. We disagree.

No. 47425-5-II

An officer may approach a residence by entering the curtilage that is impliedly open to the public. *State v. Seagull*, 95 Wn.2d 898, 902, 632 P.2d 44 (1981); *State v. Ague-Masters*, 138 Wn. App. 86, 98, 156 P.3d 265 (2007). A curtilage area includes an access route to a house such as a driveway or walkway leading to a residence, or the porch of the residence itself. *State v. Ferro*, 64 Wn. App. 181, 183, 824 P.2d 500 (1992). Here, the officers knew that Johnson lived in the barn, not in the adjacent residence, and therefore approached his home directly from the driveway. We reject Johnson's assertion.

CONCLUSION

We affirm Johnson's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

JOHANSON, J.

BJORGEN, C.J.

10