# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of: | ) ) ) | No. 76716-0-I |
| MARTIN DAVID PIETZ JR., | ) ) ) | UNPUBLISHED OPINION |
| Petitioner. | ) | |

MANN, J. — A jury convicted Martin Pietz of murder in the second degree in 2013. Pietz filed a personal restraint petition, challenging the admission of evidence and alleging ineffective assistance of appellate counsel. This court previously considered the merits of his petition and concluded that the evidence was potentially admissible under the independent source doctrine. But in the absence of an express factual finding by the trial court about the investigating officer's motivation in seeking a search warrant, we could not resolve whether the doctrine applied. We remanded to the trial court for a factual determination on the "limited issue" of whether the investigating officer "would have sought a warrant regardless of any unlawful search."[1]

---

[1] In re Pers. Restraint of Pietz, No. 76716-0-I, slip op. at 5 (Wash. Ct. App. Aug. 12, 2019) (unpublished), https://www.courts.wa.gov/opinions/pdf/767160.pdf.

The trial court conducted a reference hearing and found that the investigating officer would have sought a search warrant, notwithstanding any unlawful search.

Pietz now argues that we asked the trial court to make a finding about an issue that is not relevant to the independent source doctrine and erroneously applied the standard applicable to inevitable discovery. We adhere to our prior decision and its articulation of the relevant inquiry under the independent source doctrine. And given the trial court's finding, admission of the challenged evidence at trial did not violate Pietz's constitutional rights, and appellate counsel was not ineffective. We deny the petition.

## FACTS

In 2006, Pietz reported to the police that his wife, Nicole Pietz, was missing.[2] When he reported Nicole missing, Pietz told a responding police officer that his wife was likely wearing a white gold tennis bracelet when she disappeared. Someone found Nicole's body about a week later in a wooded area, and a forensic pathologist determined that the cause of death was manual strangulation. No bracelet was recovered at the scene. Police officers arrested Pietz several years later, in 2012, while Pietz was on his way into work at Chase Bank.

Two days after the arrest, Pietz's coworker, Amber Cowart, called the investigating officer, Detective Mike Mellis, to report that, about six months earlier, Pietz asked her to appraise his deceased wife's bracelet. Cowart said she took the bracelet

---

[2] The following facts are taken from our unpublished opinion In re Pers. Restraint of Pietz, No. 76716-0-I, slip op. at 2-5 (Wash. Ct. App. Aug. 12, 2019) (unpublished), https://www.courts.wa.gov/opinions/pdf/767160.pdf.

home, made some notes on a Post-it note, and returned the bracelet with the note to Pietz. Cowart called Mellis again the next day to tell him that she had spoken to the bank manager, Karla Hansen, who had packed up Pietz's personal items from his desk after his arrest, and Hansen reported that she had seen the Post-it note among his belongings. Mellis went to the bank and spoke to Hansen. Hansen showed Mellis the Post-it note and made him a photocopy.

Mellis returned to his vehicle with the photocopy and began to prepare a search warrant affidavit. Mellis returned to the bank when he realized that the bank closed early on Saturdays and he would not have enough time to obtain and serve a warrant before the bank closed. Hansen showed Mellis the boxes of Pietz's property and where it was stored. During their conversation, Hansen said that when cleaning Pietz's desk, she found what she believed to be a man's bracelet. Hansen showed Mellis the bracelet, returned it to its box, and Mellis left the bank without the bracelet. Three days later, a judge issued a warrant to search Pietz's property stored at the bank, and Mellis executed the warrant the next day.

Before trial, the trial court denied Pietz's motion to suppress the bracelet. A jury convicted Pietz of murder in the second degree and this court affirmed his conviction on appeal. See State v. Pietz, 71162-8-I, slip op. at 1 (Wash. Ct. App. Oct. 12, 2015) (unpublished), https://www.courts.wa.gov/opinions/pdf/711628.pdf, review denied, 185 Wn.2d 1020 (2016).

Pietz filed a timely personal restraint petition, alleging that the trial court should have suppressed the bracelet because a police officer seized it following an unlawful

search.  He also alleged ineffective assistance of appellate counsel because counsel failed to raise the suppression issue on direct review.  In response to the petition, the State argued that the evidence was admissible at trial under the independent source exception to the exclusionary rule which applies if (1) the decision to issue a warrant was not based on illegally obtained information included in the affidavit and (2) the State would have sought the warrant regardless of the illegal search.  See State v. Miles, 159 Wn. App. 282, 284, 244 P.3d 1030 (2011).  After this court denied Pietz's petition, the Supreme Court granted discretionary review and remanded to this court for a panel of judges to consider the merits.  Pietz, No. 76716-0-I, slip. op. at 5.

In our unpublished decision, we concluded that "assuming that the search and seizure of the Post-it note and bracelet were unlawful, the State has satisfied the first prong of the independent source exception to the exclusionary rule."  Pietz, No. 76716-0-I, slip. op. at 6.  But because the trial court made no express finding on the investigating police officer's motivation in seeking the warrant, as the second prong requires, we could not resolve the petition based on the record.  Pietz, No. 76716-0-I, slip. op. at 6.  We remanded to the trial court to conduct a reference hearing to resolve the factual issue of whether the investigating detective "would have sought a warrant even if he had not seen the sticky note or the bracelet."  Pietz, No. 76716-0-I, slip. op. at 13.  The Supreme Court denied discretionary review.  See Order, In re Pers. Restraint of Pietz, No. 97878-6 (Wash. July 8, 2020).

The trial court conducted a reference hearing and considered the testimony of Detective Mellis.[3] The court made factual findings, including the following:

7. The Court has a firm conviction that a search warrant would have been sought had Detective Mellis not seen the note or the bracelet. Sufficient and strong motivation existed that was not dependent on actually seeing the note and the bracelet for Detective Mellis to seek the search warrant that he eventually presented to a judge.

8. The information about the existence and location of the Post-it note is traceable directly to Ms. Cowart, Ms. Hansen and Mr. Colon. The information about the existence and location of the bracelet is traceable to Ms. Hansen. These witnesses told the detective about the two items. Detective Mellis learned of the evidence from them before he saw each item.

9. The significance of the bracelet to the investigation convincingly supports the Court's conclusion. The information orally related by the three witnesses (Cowart, Colon and Hansen) was sufficient and strong motivation standing alone, in the context of the active and pressing murder investigation, to pursue the warrant. The investigation had significant resources devoted to it and was highly active with the recent arrest of Mr. Pietz. Investigators would not have dropped searching for the note and bracelet if Detective Mellis had not seen the items.

10. The Court discounted some portions of Detective Mellis's testimony for inconsistencies and bias, but the credible and material testimony is corroborated by his written report (Exhibit 1) and is persuasive, clear and convincing.

11. That Detective Mellis would have sought a warrant even if he had not seen the note or the bracelet is established by both evidentiary standards proffered by the parties: a preponderance and clear and convincing evidence.

---

[3] The reference hearing took place in May 2021, almost two years after this court issued its decision. In the meantime, in July 2020, this court inadvertently issued the mandate before the petition had been resolved. In July 2021, after the State filed the reference hearing findings, a commissioner of this court recalled the mandate. See RAP 12.9(b).

<u>ANALYSIS</u>

Pietz argues that contrary to the holding in our prior decision in this case, the independent source doctrine cannot apply on these facts. He claims that when we required the trial court to find whether the bracelet "ultimately 'would have' been found if the prior illegal search had not occurred," we asked a question relevant only to the inevitable discovery doctrine, which Washington does not recognize. See State v. Winterstein, 167 Wn.2d 620, 636, 220 P.3d 1226 (2009) (inevitable discovery doctrine is "incompatible with the nearly categorical exclusionary rule" under the Washington Constitution).

"The independent source doctrine is a well-established exception to the exclusionary rule." State v. Betancourth, 190 Wn.2d 357, 364, 413 P.3d 566 (2018). Under the doctrine, "evidence tainted by unlawful police action is not subject to exclusion 'provided that it ultimately is obtained pursuant to a valid warrant or other lawful means independent of the unlawful action.'" Betancourth, 190 Wn.2d at 364-65 (quoting State v. Gaines, 154 Wn.2d 711, 718, 116 P.3d 993 (2005)).

Pietz inaccurately describes the limited factual issue we required the trial court to resolve. We did not ask the court to find whether the bracelet hypothetically would have been recovered by other valid means; it was, in fact, recovered through a search warrant. Instead, we asked the trial court to find whether "the officer would have sought a warrant regardless of the unlawful search or seizure." Pietz, No. 76716-0-I, slip. op. at 13. In other words, we remanded for a finding about whether

6

the state agent's decision to seek a warrant was motivated by the presumably unlawful prior search. This is the proper analysis under the second prong of the independent source doctrine. See Betancourth, 190 Wn.2d at 365 ("To determine whether challenged evidence truly has an independent source, courts ask whether illegally obtained information affected (1) the magistrate's decision to issue the warrant or (2) the decision of the state agents to seek the warrant.").

We considered and rejected essentially the same argument in our prior decision. As here, Pietz maintained that by asking "what would have happened" if the unlawful search had not occurred, we erroneously used the standard applicable to inevitable discovery. But as we explained, according to the "controlling authority" that defines the contours of the independent source exception, Murray v. United States, 487 U.S. 533, 108 S. Ct. 2529, 101 L. Ed. 2d 472 (1988), one formulation of the motivation prong is whether law enforcement "would have sought a warrant" regardless of the prior unlawful search. Pietz, No. 76716-0-I, slip. op. at 4; Gaines, 154 Wn.2d at 721; Miles, 159 Wn. App. at 296 (quoting Murray, 487 U.S. at 542-43). We decline to revisit this argument.[4]

Relying on State v. Smith, 177 Wn.2d 533, 540-41, 303 P.3d 1047 (2013), Pietz argues (1) a search warrant can provide an independent source only if

---

[4] To the extent that Pietz relies on different authority, State v. Green, 177 Wn. App. 332, 343-44, 312 P.3d 669 (2013), his argument is not persuasive. In Green, the receipts at issue were not admissible under the independent source doctrine because "[n]either the receipts nor knowledge of them were in fact found through an independent source." Green, 177 Wn. App. at 344. While police obtained a search warrant after conducting an initial unlawful search in that case, the receipts were not recovered during that search. Green, 177 Wn. App. at 344. Here, law enforcement recovered the bracelet under the warrant which provided an independent source.

obtained by state agents who were uninvolved in any prior unlawful search, and (2) there was no independent source for Detective Mellis's "presence" in the room at the bank where Pietz's personal property was stored.

The independent source doctrine did not apply in Smith because the search there, of a motel room, was motivated solely by a prior unlawful search of the motel registry. Smith, 177 Wn.2d at 540. But here, as the trial court found, Mellis was preparing warrant documents before he viewed the bracelet, and his motivation to seek the warrant was unchanged by what Hansen showed him. And a state agent's involvement in both a prior unlawful search and the process to obtain a valid search warrant does not preclude the warrant from serving as an independent source. In the seminal independent source doctrine case, Murray, federal agents were conducting surveillance of a warehouse, and then unlawfully entered the warehouse and saw burlap-covered bales. 487 U.S. at 535. The agents did not disturb the bales, but continued to keep the warehouse under surveillance while they simultaneously obtained a search warrant. Murray, 487 U.S. at 535. After they obtained the warrant, the same officers reentered the warehouse and seized drug evidence. Murray, 487 U.S. at 536; see also Miles, 159 Wn. App. at 286-88 (independent source exception potentially applied when administrative agency first obtained records through an administrative subpoena, later invalidated, and then obtained a warrant to seize the same records).

The independent source for Detective Mellis's "presence" in the bank when he reentered to ensure the secure storage of Pietz's personal property is not

8

relevant. Our analysis assumed that the initial search of Pietz's property was unlawful. The doctrine allows admission of tainted evidence if the unlawful search does not affect the decision to issue the warrant or prompt the state agent to seek the warrant. The search warrant Mellis obtained after Hansen showed him the bracelet, which was supported by sufficient evidence that Mellis was aware of before he reentered the bank, served as an independent source.

Pietz also insists that application of the independent source doctrine to the facts here is inconsistent with the Supreme Court's decisions in State v. Rothenberger, 73 Wn.2d 596, 440 P.2d 184 (1968), and State v. Mayfield, 192 Wn.2d 871, 434 P.3d 58 (2019). But Rothenberger stands for the proposition that Washington's exclusionary rule does not operate on a strictly "but-for" causation basis and applies only to the fruit of the poisonous tree. 73 Wn.2d at 600-01 (the "'poison' if any, which had inhered in the original unlawful arrest was so greatly attenuated by the time and circumstances intervening . . . that it had lost its potency"). And Mayfield addressed whether the federal attenuation doctrine is compatible with Washington's narrower exclusionary rule, a question not at issue. 192 Wn.2d at 434. Mayfield did not change the analysis of the independent source doctrine, and application of the independent source exception to these facts does not conflict with the holding in Rothenberger.

Pietz's reliance on State v. Gibbons, 118 Wash. 171, 203 P. 390 (1922), is also misplaced. In Gibbons, our Supreme Court adopted an independent exclusionary rule before the federal exclusionary rule was made applicable to the

9

states. 118 Wash. at 189. Gibbons did not, however, discuss or apply the independent source doctrine and unlike the police officer in that case, Detective Mellis had independent evidence supporting probable cause for the warrant, separate from seeing the bracelet and the Post-it note at the bank.

Pietz does not assign error to any of the trial court's findings of fact following the reference hearing. However, even if he claims that Detective Mellis testified that he "[did] not know what he would have done" and therefore the trial court's finding that "Detective Mellis would have sought a warrant even if he had not seen the note or the bracelet" is unsupported by the evidence, we disagree. Detective Mellis testified at the reference hearing that he went to the bank to talk to Hansen, and that if she confirmed what Cowart had relayed to him, he would have applied for a search warrant. He testified that, after speaking with Hansen, he began to write the search warrant affidavit to search for "everything related to jewelry that was known to be missing." Detective Mellis confirmed that he would have applied for a search warrant if Hansen said she saw a Post-it note among Pietz's belongings that matched Cowart's description, even if she did not show him the note or provide a copy. Substantial evidence in the record supports the trial court's finding. In re Pers. Restraint of Stenson, 174 Wn.2d 474, 488, 276 P.3d 286 (2012) (we review reference hearing factual findings to see if substantial evidence supports them).

Finally, Pietz appears to suggest that based on Detective Mellis's testimony about other details about the investigation and his investigation practices in general, his testimony about what prompted him to seek a search warrant was not credible.

But the trial court expressly found that "Detective Mellis's testimony about the warrant he intended to seek was credible." And while the court "discounted some portions of Detective Mellis's testimony for inconsistencies and bias," it found that his "material" testimony was "credible," "corroborated," and "persuasive, clear and convincing." "'Credibility determinations are for the trier of fact' and are not subject to review." State v. Cardenas-Flores, 189 Wn.2d 243, 266, 401 P.3d 19 (2017) (quoting State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990)).

In sum, we reject Pietz's claims that our remand required the trial court to apply inevitable discovery, mislabeled as the independent source doctrine. In view of the trial court's findings on the second "motivation" prong of the independent source doctrine, we conclude that the evidence was admissible at trial. For this reason, Pietz's claim of ineffective assistance of appellate counsel also fails. We deny the petition.

_____
Mann, J.

WE CONCUR:

_____          _____
Cohen, J.                                 Andrus, C.J.

11