# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>CHARLES CHRISTOPHER JOHNSON,<br><br>Appellant. | No.  49088-9-II<br><br><br><br><br>UNPUBLISHED OPINION |

JOHANSON, J. — Charles C. Johnson appeals his jury trial convictions for possession of a controlled substance, methamphetamine, and two counts of bail jumping.[1]  Johnson argues that at his suppression hearing, the trial court entered a finding of fact not supported by substantial evidence and that the trial court erroneously concluded that Johnson's arrest was lawful.  Johnson also raises several arguments in his statement of additional grounds (SAG).[2]  We hold that the trial court properly concluded that the arrest was lawful.  We also hold that Johnson's SAG arguments fail.  Accordingly, we affirm Johnson's convictions and sentence.

---

[1] RCW 69.50.4013(1) and RCW 9A.76.170, respectively.

[2] RAP 10.10.

FACTS

I. Background[3]

In December 2015, Shelton Police Officer Robert Auderer stopped his patrol car to make contact with Johnson, whom Auderer believed was trespassing on Bonneville Power Administration (BPA) property. Officer Auderer advised Johnson that he was trespassing. While Officer Auderer awaited confirmation of whether there was a warrant for Johnson's arrest, Johnson began to exhibit signs of methamphetamine intoxication, and Officer Auderer handcuffed Johnson.

After handcuffing Johnson, Officer Auderer observed a baggie that appeared to contain methamphetamine in Johnson's pants pocket. Officer Auderer arrested Johnson for trespassing and seized the baggie. Johnson was taken into custody, and four days later, the State charged Johnson with unlawful possession of a controlled substance, methamphetamine.[4]

II. Suppression Motion and Hearing

A. Suppression Motion

In March 2016, Johnson moved to have "any evidence seized" from Officer Auderer's stop suppressed under CrR 3.6. Clerk's Papers (CP) at 85. Johnson argued that Officer Auderer had conducted a *Terry*[5] stop without having the requisite reasonable and articulable suspicion of

---

[3] The background facts are based on the suppression hearing testimony.

[4] Johnson was released from custody on bail twice, and both times Johnson failed to appear at his court hearings. In February 2016, the State amended the information to include a count of bail jumping. In April, the State again amended the information and included a second bail jumping count. Johnson was arraigned on these charges on the day of trial.

[5] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

criminal activity.[6]  Johnson further argued that Officer Auderer's detention of Johnson was unlawful because there was not a "substantial possibility that criminal conduct ha[d] occurred or [wa]s about to occur." CP at 85. The State responded that the evidence should not be suppressed because Officer Auderer had probable cause to arrest Johnson for trespassing.

### B. SUPPRESSION HEARING TESTIMONY AND ARGUMENT

In May, Officer Auderer testified at the suppression hearing. Officer Auderer recounted that "around the hours of darkness," he had come into contact with Johnson on an area of BPA property with which Auderer was familiar. I Report of Proceedings (RP) at 8. Officer Auderer was aware of "[e]xtensive transient activity" and a related history of complaints from BPA authorities to enforce trespassing laws. I RP at 9. Without objection, Officer Auderer testified that the BPA had provided the police department with a letter requesting enforcement and a map of the land owned by the BPA. The State did not introduce the letter to which Officer Auderer referred.

Officer Auderer testified that there were two no-trespassing signs in between which Johnson was standing when Auderer apprehended Johnson. One sign was mounted upon a metal tower and the other was on a chain link fence surrounding a power substation. Johnson was standing between the metal tower and the fence on the gravel road. Both signs were visible during the daylight to an observer standing on the gravel road. On cross-examination, Officer Auderer

---

[6] In its oral ruling at the suppression hearing, the trial court rejected the characterization of the stop as a *Terry* stop and applied the probable cause standard required for an arrest because "[t]he articulable facts known to Officer Auderer that formed the basis of the arrest reference really the observations of an information known to the officer that were not obtained as a result of a[n] investigative detention. So, this goes beyond the standard necessary for a *Terry* stop." I Report of Proceedings (RP) at 52.

noted that there were streetlights and ambient light in the area, although the trespassing signs were not directly lit.

Related to the condition of the land, Officer Auderer agreed on cross-examination that the land was "pretty much unimproved" other than the "right-of-way for the road." I RP at 39. The gravel road was an "access road" and the property contained "[m]ultiple" metal towers outside the fenced-in power station. I RP at 39-40.

Officer Auderer advised Johnson that he was trespassing, obtained Johnson's identification, and, when Auderer learned there was a "warrant hit," awaited confirmation of the warrant for Johnson's arrest. I RP at 13. During this time, Johnson exhibited signs of methamphetamine intoxication and indications that he was about to flee or attack Officer Auderer. Officer Auderer placed Johnson in handcuffs and then noticed in Johnson's open pants pocket an object that "appeared to be a baggie of methamphetamine." I RP at 16. Officer Auderer arrested Johnson for trespassing and retrieved the methamphetamine from Johnson's pocket.

After Officer Auderer's testimony, Johnson argued that the stop was unwarranted because Johnson was on "unimproved" land, the no-trespassing signs could have been directions not to climb on the tower or enter the fenced area surrounding the substation, and it was unreasonable to think Johnson even saw the signs. The State responded that the property was "improved" because it contained a power grid and metal towers and that the no-trespassing signs were "conspicuous." Johnson did not raise any issue regarding Officer Auderer's "jurisdiction" or authority to enforce state law on federal property.

C. ORDER DENYING SUPPRESSION MOTION

The trial court entered written findings of fact including that on the date of Johnson's arrest, as relevant here,

> 2. Officer Robert Auderer observed a male, later identified as Charles Johnson, standing between two clearly visible no[-]trespassing signs on an improved gravel road owned by [BPA]. The no[-]trespassing signs [were] located on a fenced in area with electrical equipment and unfenced electrical towers. Officer Robert Auderer knew that the location belonged to [BPA] and . . . [BPA] had requested that trespassers and illegal campers be removed from the property. Officer Robert Auderer also knew that the access road was a point of entry for illegal campers on to [BPA] property.

CP at 112-13.

In its oral ruling, the trial court stated that the "focus of this inquiry is what did Officer Auderer know that . . . created the reasonable grounds for him to believe that a misdemeanor trespass had occurred?" I RP at 53-54. The trial court explained that Officer Auderer was aware of a history of trespassing in the area from which Johnson was walking and that Officer Auderer encountered Johnson in an improved area. Related to the no-trespassing signs, the trial court noted that although there was no testimony that the no-trespassing signs were visible at the time of Johnson's arrest, there were "reasonable grounds for Officer Auderer to believe that [Johnson] had notice at the time that [Auderer] made the arrest." I RP at 56. Namely, it would have been reasonable for Officer Auderer to infer that the signs were visible when Johnson had entered the area.

The trial court also entered written conclusions of law, including that the arrest was lawful, that the search incident to arrest was lawful, and that the seizure of the methamphetamine was lawful. The trial court denied the motion to suppress and ruled that all the evidence seized by Officer Auderer and Johnson's statements were admissible. Because Johnson did not raise the

5

issue, the trial court did not make any ruling regarding Officer Auderer's authority to act on federal lands.

### III. EVIDENTIARY RULING, TRIAL, AND CLOSING ARGUMENT

Before trial, the trial court ruled that it would admit evidence of Johnson's prior convictions for possession of methamphetamine, subject to a limiting instruction, to show that Johnson knew that the substance Officer Auderer had seized was methamphetamine. At Johnson's trial, the methamphetamine seized by Officer Auderer was admitted during the State's case. And subject to the limiting instruction, the trial court allowed the State to admit evidence of Johnson's prior convictions for possession of methamphetamine.

Related to Johnson's bail jumping charges, the State introduced evidence of Johnson's failure to appear before the trial court on two occasions. In closing argument, Johnson's counsel left it to the jury to decide whether the elements of bail jumping had been met, although Johnson's counsel stated that he did not concede that Johnson was guilty.

### IV. CONVICTION AND SENTENCE

A jury found Johnson guilty of unlawful possession of a controlled substance, methamphetamine, and two counts of bail jumping. On June 13, Johnson received a "Drug Offender Sentencing Alternative" (DOSA), RCW 9.94A.660, sentence and was ordered to report to treatment and comply with community custody and to pay legal financial obligations (LFOs), including restitution.[7]

---

[7] On August 2, the trial court held a show cause hearing and found that Johnson had violated his DOSA. On August 16, instead of revoking the DOSA, the trial court ordered Johnson to report to a "dual diagnosis" DOSA facility. II RP at 255.

Johnson appeals the denial of his suppression motion, the admission of "hearsay" and "ER 404(b)" evidence at his trial, and his judgment and sentence. CP at 6.

ANALYSIS

I. SUPPRESSION MOTION DENIAL

Johnson challenges the trial court's conclusion that his arrest was lawful. He contends that because there was no probable cause to arrest him, the ensuing arrest and search incident to arrest were unlawful and accordingly that the trial court should not have allowed the methamphetamine found in Johnson's pocket to be used against Johnson at trial.[8] We disagree.

A. STANDARD OF REVIEW: SUPPRESSION HEARINGS

Following a suppression hearing, we review challenged findings of fact to determine whether they are supported by substantial evidence. *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003). Unchallenged findings are verities on appeal, and challenged findings supported by substantial evidence are binding. *O'Neill*, 148 Wn.2d at 571. Substantial evidence is that which is "sufficient to persuade a fair-minded person of the truth of the asserted premise." *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). When determining whether substantial evidence supports a challenged finding, we defer to the trial court, and we do not "'disturb findings of fact supported by substantial evidence even if there is conflicting evidence.'" *In re Pers.*

---

[8] Johnson also argues that substantial evidence does not support the trial court's finding that two no-trespassing signs were clearly visible. Because the trial court properly found that the land was improved property, the visibility of the signage is immaterial to whether Johnson's entry was unlawful. And as discussed below, Officer Auderer's testimony supports the finding that the land was improved property.

*Restraint of Stenson*, 174 Wn.2d 474, 488, 276 P.3d 286 (2012) (quoting *Merriman v. Cokeley*, 168 Wn.2d 627, 631, 230 P.3d 162 (2010)).

We review the trial court's conclusions of law following a suppression hearing de novo. *Homan*, 181 Wn.2d at 106. We affirm conclusions of law that are supported by the findings of fact. *State v. Vickers*, 148 Wn.2d 91, 116, 59 P.3d 58 (2002).

## B. LAWFUL ARRESTS

Pursuant to a lawful arrest, an arresting officer has authority to search an arrestee's person and his personal effects. *State v. Byrd*, 178 Wn.2d 611, 617-18, 310 P.3d 793 (2013) (quoting *United States v. Robinson*, 414 U.S. 218, 224, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973)). If a search is unlawful, generally evidence seized during that search is suppressed. *State v. Gaines*, 154 Wn.2d 711, 716-17, 116 P.3d 993 (2005).

RCW 10.31.100(1) allows warrantless arrests in situations including, as relevant here, where a police officer has "probable cause to believe that a person has committed or is committing a misdemeanor . . . involving criminal trespass under RCW 9A.52.070[9] or 9A.52.080." "Probable cause exists when the arresting officer is aware of facts and circumstances, based on reasonably trustworthy information, sufficient to cause a reasonable officer to believe that a suspect has committed or is committing a crime." *State v. Afana*, 169 Wn.2d 169, 182, 233 P.3d 879 (2010). Importantly, what matters is not whether the suspect actually committed a crime but the objective reasonableness of the officer's belief that probable cause existed. *Afana*, 169 Wn.2d at 183. The

---

[9] RCW 9A.52.070(1) governs first degree criminal trespass, which involves "knowingly enter[ing] or remain[ing] unlawfully in a building" and is not relevant here.

arresting officer need not have evidence to prove beyond a reasonable doubt each element of the crime. *State v. Gaddy*, 152 Wn.2d 64, 70, 93 P.3d 872 (2004).

RCW 9A.52.080(1) defines second degree criminal trespass as "knowingly enter[ing] or remain[ing] unlawfully in or upon premises of another under circumstances not constituting criminal trespass in the first degree." The circumstances under which a person "'[e]nters or remains unlawfully'" are defined by RCW 9A.52.010(2)[10] as

> [a] person "enters or remains unlawfully" in or upon premises when [he] is not then licensed, invited, or otherwise privileged to so enter or remain.
> . . . .
> . . . A person who enters or remains upon unimproved and apparently unused land, which is neither fenced nor otherwise enclosed in a manner designed to exclude intruders, does so with license and privilege unless notice against trespass is personally communicated to [him] by the owner of the land or some other authorized person, or unless notice is given by posting in a conspicuous manner.

## C. ANALYSIS

Johnson relies upon the portion of RCW 9A.52.010(2) that discusses entry onto "'unimproved and apparently unused land'" and argues that his entry was "'with license and privilege'" because notice was not given "'by posting in a conspicuous manner.'" Br. of Appellant at 9-12 (quoting RCW 9A.52.010(2)). But this argument overlooks that the requirement of notice by "posting in a conspicuous manner" applies to entry on *unimproved* land. *See* RCW 9A.52.010(2). Here, however, the trial court found that Johnson was standing on *improved* land— the gravel access road—at the time of Johnson's arrest.

---

[10] The citation is to the current statute; in 2016, deletions from RCW 9A.52.010 renumbered but did not substantively change RCW 9A.52.010(2). LAWS OF 2016, ch. 164, § 12.

Johnson does assign error to finding of fact 2, which includes the written finding that Johnson was "standing . . . on an improved gravel road." CP at 112. However, Johnson does not argue that the portion of the finding that he was standing on an improved gravel road is unsupported by substantial evidence. Even if he did, Officer Auderer's testimony that Johnson was standing on the access road when Auderer arrested Johnson, that the area other than the "right-of-way for the road" was "pretty much unimproved," and that the gravel road was used to access the property constitute substantial evidence to support the finding. I RP at 39. Accordingly, the finding that Johnson was standing on improved land at the time of his arrest is binding on appeal. *See O'Neill*, 148 Wn.2d at 571.

Because Johnson was standing on *improved* land, RCW 9A.52.010(2) required that Johnson only be unlicensed, uninvited, or otherwise unprivileged to unlawfully "enter[] or remain[]" on the land. Under this definition, Johnson entered or remained unlawfully on the access road even if the signs were not clearly visible at night and did not clearly convey that it was the gravel road, not the towers or fenced substation, that were off limits, as Johnson contends.

Johnson relies upon *State v. Johnson* to argue that even with the signs, the gravel road was impliedly open to the public. 75 Wn. App. 692, 879 P.2d 984 (1994). But this case does not establish—and Johnson does not otherwise explain how—he had a license, invitation, or privilege to enter or remain on the access road. *See* RCW 9A.52.010(2).

To conclude that Officer Auderer had probable cause to arrest Johnson, the trial court had to find that at the time of the arrest, Officer Auderer was aware of facts and circumstances, based on reasonably trustworthy information, sufficient to cause him to believe that Johnson was committing second degree trespass. *See Afana*, 169 Wn.2d at 182. Because Johnson was on

*improved* land, those facts and circumstances had to be sufficient to cause an objectively reasonable belief that Johnson had "knowingly" entered or remained upon premises where he was not "licensed, invited, or otherwise privileged" to enter or remain. RCW 9A.52.010(2); *see Afana*, 169 Wn.2d at 183; RCW 9A.52.080(1).

Here, the trial court's findings related to Officer Auderer's knowledge at the time of Johnson's arrest were as follows: "Auderer knew that the location belonged to [BPA] and that [BPA] had requested that trespassers and illegal campers be removed from the property. Officer . . . Auderer also knew that the access road was a point of entry for illegal campers on to [BPA] property." CP at 112-13. Again, although Johnson generally assigns error to the entirety of finding of fact 2, Officer Auderer's testimony supports all of these findings. Officer Auderer testified at the suppression hearing that he was familiar with the BPA property and a history of transient activity and related complaints by BPA, including BPA's request that the police enforce trespassing laws on the property.

The trial court also found that the signs were "clearly visible" to those who used the path. CP at 112. Johnson argues that substantial evidence does not support the trial court's finding that two no-trespassing signs were clearly visible and that the signs did not give notice that the *improved road*—rather than the tower and fenced substation—was off limits. Because the trial court properly found that the land was improved property, the visibility of the signage is immaterial to whether Johnson's entry was unlawful. The visibility of the signs was a factor in Officer Auderer's conclusion that there was probable cause to arrest Johnson for trespassing. However, Officer Auderer's testimony and the suppression hearing evidence show that the signs were near the entry to the area, which was used to access the property, and that it was reasonable for Auderer

11

to infer that the signs had been visible to Johnson when he entered the area. The signs' visibility to those using the road, Officer Auderer's familiarity with the area, and Officer Auderer's knowledge of a history of trespassing on the property together support that Officer Auderer could reasonably have believed that Johnson knew he was trespassing. *See Afana*, 169 Wn.2d at 183, RCW 9A.52.080(1).

Taken together, these findings amount to facts and circumstances sufficient to cause Officer Auderer to have an objectively reasonable belief that Johnson had knowingly entered or remained upon premises where he was not licensed, invited, or otherwise privileged to enter or remain. *See Afana*, 169 Wn.2d at 183; RCW 9A.52.080(1), .010(2). Notably, the trial court did not have to conclude that Officer Auderer believed he could prove every element of second degree trespass beyond a reasonable doubt. *See Gaddy*, 152 Wn.2d at 70. Because the findings of fact support that there was probable cause to arrest Johnson, we affirm the trial court's legal conclusion that the "arrest of [Johnson] was lawful."[11] CP at 114; *Vickers*, 148 Wn.2d at 116; *see* RCW 10.31.100. And because the arrest was lawful, we further hold that the trial court correctly concluded that the ensuing search was lawful and declined to suppress the methamphetamine. *See Byrd*, 178 Wn.2d at 617-18; *Gaines*, 154 Wn.2d at 716-17.

---

[11] In his SAG, Johnson argues that the trial court erred when it denied his suppression motion because the trial court relied upon *State v. Morgan*, 78 Wn. App. 208, 211, 896 P.2d 731 (1995) (holding that if property is sometimes open to the public, then at times when the property is closed, some type of notice is required before users can be arrested for trespass), in reaching its decision. We disagree because based upon our de novo review, the trial court's conclusion was correct. Further, the trial court properly relied on *Morgan* for the principle that it had to look to what "Officer Auderer kn[e]w that formed the basis that created the reasonable grounds for him to believe that a misdemeanor trespass had occurred." II RP at 53-54.

## II. SAG ARGUMENTS

Johnson asserts multiple alleged errors in his SAG. We hold that these arguments either lack merit or cannot be addressed.

### A. WITNESS AND JUDICIAL MISCONDUCT AT THE SUPPRESSION HEARING

Johnson claims that Officer Auderer committed perjury because his oral testimony at the suppression hearing conflicted with his written report. Relatedly, Johnson argues that it was judicial misconduct for the judge to rely upon a witness's allegedly questionable testimony. We hold that these arguments fail.

### 1. PRINCIPLES OF LAW

It is the trier of fact who assesses a witness's credibility and weighs the evidence. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). That some of the witness's statements contradicted others goes to the witness's credibility and does not reflect misconduct by the witness. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004) (holding that the appellate court "must defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence"). Testimony that is confusing and somewhat contradictory does not necessarily constitute perjury. *See* RCW 9A.72.050(1) (perjury consists of a person making inconsistent material statements under oath, knowing one to be false); *Nessman v. Sumpter*, 27 Wn. App. 18, 24, 615 P.2d 522 (1980) (contradictory statements are not direct evidence of falsity that perjury requires).

### 2. WITNESS MISCONDUCT: PERJURY

Based on a review of the record, Officer Auderer did not make any material oral statements that conflicted with his written report. But even if Officer Auderer had made conflicting material

statements, those statements would go to his credibility; they do not reflect misconduct by the witness or constitute perjury. *See Thomas*, 150 Wn.2d at 874-75. Thus, we disagree with Johnson that Officer Auderer committed witness misconduct.

3.      JUDICIAL MISCONDUCT:  RELIANCE ON A QUESTIONABLE WITNESS

The judge is the trier of fact at a suppression hearing. As stated above, the record does not show that Officer Auderer made any material statements that were contradictory. But even if he had, his statements go to his credibility and are left to the judge as the trier of fact. *See Thomas*, 150 Wn.2d at 874-75. Because credibility determinations are left to the trier of fact, we reject this claim.

B.  AUTHORITY OF ARRESTING OFFICER AS GROUNDS FOR SUPPRESSION

Johnson asserts that the trial court erred when it denied his suppression motion because there was insufficient evidence to show that Officer Auderer had "jurisdiction" on BPA property. Johnson contends that the BPA is located on federal property and thus the State is required to show that state officers had "jurisdiction" on BPA property. We hold that Johnson waived this argument.

We do not address arguments first raised on review, subject to certain exceptions, including arguments that pertain to "lack of trial court jurisdiction" or "manifest error affecting a constitutional right." RAP 2.5(a). It is important to note that although Johnson uses the word *jurisdiction*, he apparently means *authority* to act on federal property. *See* RAP 2.5(a)(1). Johnson does not argue that the arresting officer's alleged lack of authority was a constitutional error. *See* RAP 2.5(a)(3). Thus, to preserve this issue for appeal, Johnson had to argue a lack of authority at the suppression hearing.

At the suppression hearing, Officer Auderer testified that the BPA owned the property on which Johnson trespassed and that the BPA had requested that the local police department enforce the no-trespassing laws. The trial court's written findings also noted that the BPA owned the property. Johnson did not argue that Officer Auderer lacked authority to arrest Johnson on BPA property or to enforce the trespassing laws. Thus, we hold that Johnson has waived this argument. *See* RAP 2.5(a).

## C. EVIDENTIARY ERRORS: SUPPRESSION HEARING AND TRIAL

Johnson alleges evidentiary errors during both the suppression hearing and at trial. Namely, Johnson argues that at the suppression hearing, the State failed to lay the proper foundation for testimony regarding the BPA letter and that at the trial, the trial court improperly allowed the State to present evidence of Johnson's prior convictions. We hold that these arguments either were unpreserved, lack merit, or are too vague to address.

### 1. LEGAL PRINCIPLES

"'The standard of review for evidentiary rulings made by the trial court is abuse of discretion.'" *Peralta v. State*, 187 Wn.2d 888, 894, 389 P.3d 596 (2017) (quoting *City of Spokane v. Neff*, 152 Wn.2d 85, 91, 93 P.3d 158 (2004)). An abuse of discretion exists "'[w]hen a trial court's exercise of its discretion is manifestly unreasonable or based upon untenable grounds or reasons.'" *State v. Neal*, 144 Wn.2d 600, 609, 30 P.3d 1255 (2001) (alteration in original) (quoting *State v. Stenson,* 132 Wn.2d 668, 701, 940 P.2d 1239 (1997)).

A party may claim error in a ruling to admit evidence if (1) the error affects a substantial right of the party and (2) the party makes a timely objection or motion to strike on the record. ER

103. Accordingly, the failure to object to the admission of evidence precludes a party from raising the issue on appeal. *Thomas*, 150 Wn.2d at 856.

2.     LACK OF FOUNDATION FOR BPA LETTER AT THE SUPPRESSION HEARING

Johnson claims that the State failed to lay the proper foundation for a letter from BPA requesting that Shelton police enforce trespassing laws. At the suppression hearing, Officer Auderer stated that he was familiar with the BPA property because authorities at BPA had made a written request to Shelton police to have trespassing laws enforced. This letter was not presented at the hearing, but Officer Auderer referred to it during both direct and cross-examination. Defense counsel neither objected to Officer Auderer's testimony about the letter nor requested that the letter be provided to the trial court.

Given that the defense did not timely object to Officer Auderer's testimony about the BPA letter, the issue is not preserved for appeal. *Thomas*, 150 Wn.2d at 856. We do not reach the merits of this unpreserved claim.

3.     ER 404(B) RULING—ADMISSION OF EVIDENCE OF PRIOR CONVICTIONS AT TRIAL

Johnson appears to assert that the trial court erred when it allowed the State to present evidence of Johnson's prior convictions for possession of methamphetamine at Johnson's trial. Specifically, he says, "Judge Goodell granted latitude to the prosecution by allowing previous convictions in trial. I ask for consideration in kind." SAG at 3. This assertion is too vague to apprise the court of the nature and occurrence of the alleged error. RAP 10.10(c). Thus, we do not further consider Johnson's argument.

### D. INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL

Johnson alleges that his counsel was ineffective during his trial because he failed to defend against the two bail jumping charges.[12] We disagree.

A claim of ineffective assistance of counsel is a mixed question of law and fact that we review de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To establish ineffective assistance of counsel, the defendant must show both that his attorney's performance was deficient and that the deficiency prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Deficient performance is that which falls below an objective standard of reasonableness under the circumstances. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). "There is a strong presumption that counsel's performance was reasonable"; matters of legitimate trial tactics or strategy do not constitute deficient performance. *Kyllo*, 166 Wn.2d at 862-63. Prejudice is a reasonable probability that, but for the deficient performance, the outcome of the proceedings would have differed. *Kyllo*, 166 Wn.2d at 862. "If either element of the test is not satisfied, the inquiry ends." *Kyllo*, 166 Wn.2d at 862.

The State presented evidence that Johnson had failed to appear on two separate hearing dates. In closing argument, Johnson's attorney stated that he was not conceding that Johnson was guilty of bail jumping, but defense counsel also did not defend against the bail jumping charges. Defense counsel stated that he was "just going to leave [Johnson's guilt for bail jumping to the

---

[12] Johnson argues that his counsel "made no attempt to defend against the more serious charges during trial." SAG at 3. We construe this as a claim of ineffective assistance of counsel for failure to defend against the bail jumping charges, which in this case were more serious because they carried a greater standard range sentence.

jury] to decide if" the elements of bail jumping had been met "because there was really no testimony that would allow [him] to make much of an argument." II RP at 188.

Nothing in the record suggests that there was a reasonable defense against Johnson's bail jumping charges. We thus hold that the decision not to defend against the bail jumping charges was a matter of legitimate trial strategy and accordingly was not deficient performance. *Kyllo*, 166 Wn.2d at 862. Thus, Johnson's claim of ineffective assistance of counsel fails. *See Kyllo*, 166 Wn.2d at 862.

### E. MATTERS OUTSIDE THE RECORD

Johnson alleges multiple errors that rely on facts or documents outside the record. We do not reach these arguments.

A SAG should refer only to documents that are contained in the record on review. RAP 10.10(c). "If a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition." *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). We "generally will not review a matter on which the trial court did not rule." *Meresse v. Stelma*, 100 Wn. App. 857, 867, 999 P.2d 1267 (2000); *see* RAP 2.4(a).

### 1. HELD IN CUSTODY WITHOUT COURT AUTHORIZATION

Johnson asserts that he was held in custody without court authorization. We do not reach Johnson's argument because it relies upon matters outside the record.

The record shows that Johnson was held in custody several different times: following his arrest and before his trial, after his trial until his sentencing, and for a period after he was found in violation of his DOSA but before the trial court determined whether it would revoke the DOSA.

Thus, to be successful, Johnson's claim must rely on facts outside the record. We, therefore, do not reach this issue.

2.    JURY SUPERVISOR MISCONDUCT

Johnson states that his father "has forsaken [him] for seven years" and that his father's close friend, Ruth Flakus, was the jury supervisor for Johnson's trial. SAG at 5. Although the record verifies that Flakus was the jury supervisor, there is no information in the record regarding whether Flakus and Johnson's father were acquainted. In order for us to analyze whether there was misconduct, we must necessarily determine that Flakus is a friend of Johnson's father. Such a fact is outside the record. Further, Johnson fails to apprise us as to the nature and occurrence of any alleged error. Accordingly, we do not reach the merits of this issue.

F.  MATTERS THAT ARE UNSUPPORTED BY THE RECORD

Johnson alleges several claims that are unsupported by the record. We hold that these arguments fail or are too vague to address.

1.    UNTIMELY BAIL JUMPING CHARGES

Johnson asserts that the trial court erroneously allowed the State to submit two bail jumping charges on the day of trial. The record belies Johnson's contention: the State amended the information to include the final bail jumping charge approximately a month before trial. Indeed, Johnson's counsel recognized receipt of the bail jumping charges prior to trial. We hold that this argument is unsupported by the record and accordingly fails.

2.    FAILURE TO ARRAIGN ON THE BAIL JUMPING CHARGES

Johnson states that he was never arraigned on the bail jumping charges. To the contrary, Johnson was arraigned on the bail jumping charges on the day of trial. Formal reading of the

19

charges was waived and a not-guilty plea was entered for both counts. We hold that the record does not support this claim.

3. JUDGMENT AND SENTENCE NOT AMENDED

Johnson contends that his judgment and sentence was not amended during or after his August 2 show cause hearing. We note that the trial court did amend Johnson's judgment and sentence—the trial court adjusted the amount of LFOs in an order that "amended" the "judgment & sentence." CP at 95. Nothing else in the record suggests that the judgment and sentence was otherwise required to be amended. Johnson does not explain how the judgment and sentence should have been amended. As such, he fails to apprise us of the nature and occurrence of any alleged error as required by RAP 10.10(c). This contention is too vague to address on the merits.

G. CLAIMS OUTSIDE THE SCOPE OF THIS APPEAL

Johnson alleges multiple errors related to his August 2 DOSA show cause hearing.[13] Johnson alleges that at the show cause hearing, an American Behavioral Health Systems (ABHS) staff member committed perjury. Related to his claim of witness misconduct by the ABHS staff member, Johnson claims that his counsel failed to bring perjury charges against the ABHS staff member.[14] Johnson also asserts that the trial court relied on this allegedly questionable evidence. Finally, Johnson asserts that the trial court admitted irrelevant evidence during Johnson's cross-

---

[13] Johnson states that the referenced show cause hearing occurred in July 2016. The record does not include a show cause hearing in July but does include a show cause hearing on August 2, 2016. Johnson's allegations correspond with the facts from the August 2 show cause hearing, so we assume this was a typographical error.

[14] Johnson states, "Mr. Rothman did not file perjury charges," but Mr. Rothman was the attorney for the State. SAG at 4. We assume this is a typographical error and that Johnson is referring to his own counsel, Ronald Sergi.

examination. We do not review these claimed errors related to the show cause hearing because they are outside the scope of this appeal.

"An appellate court's review is necessarily limited by the scope of a given appeal." *Clark County v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 177 Wn.2d 136, 145, 298 P.3d 704 (2013). The notice of appeal must "designate the decision or part of decision which the party wants reviewed." RAP 5.3(a)(3); *see also Cook v. Commellini*, 200 Wash. 268, 270-71, 93 P.2d 441 (1939) (It is "a well-established rule that, on appeal from only a part of a judgment or decree, the court may not review rulings which do not affect the part appealed from.").

Here, the show cause hearing that Johnson references was held to review Johnson's alleged DOSA violation. Johnson's notice of appeal and supplemental notice of appeal state that Johnson appeals only the suppression hearing, evidentiary rulings at Johnson's trial, and his judgment and sentence. Both notices of appeal, which were filed in June, do not (and could not) say that Johnson appeals from the August show cause hearing or the related show cause order. Thus, we decline to reach these issues that are outside the scope of Johnson's appeal.

### III. APPELLATE COSTS

Johnson requests that should the State substantially prevail on appeal, this court deny a cost bill. The State represents to this court that it will not request appellate costs. Accordingly, we accept the State's representation and deny an award of appellate costs to the State.

No. 49088-9-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Johanson, J.
JOHANSON, J.

We concur:

Maxa, A.C.J.
MAXA, A.C.J.

Lee, J.
LEE, J.