116 P.3d 993 (2005)
STATE of Washington, Respondent,
v.
Devennice Antoine GAINES and Norman Leroy Gaines, Petitioners,
Leandre Antoine Gaines, Defendant.
Nos. 74793-8, 75718-6.
Supreme Court of Washington, En Banc.
Argued February 8, 2005.
Decided July 28, 2005.
*994 Oliver Ross Davis, Washington Appellate Project, Sheryl Gordon McCloud, Seattle, Devennice Gaines, Washington State Reformatory, Monroe, for Petitioners.
James Morrissey Whisman, King County Prosecutor's Office, Seattle, for Respondent.
Douglas B. Klunder, Seattle, for Amicus Curiae American Civil Liberties.
J.M. JOHNSON, J.
¶1 In these consolidated cases, petitioners Norman and Devennice Gaines claim that the trial court erred when it denied their motion to suppress an assault rifle and other evidence initially discovered during a warrantless search of a locked automobile trunk. However, the police subsequently obtained a search warrant for the vehicle, including the trunk, based on information independent from the initial, warrantless search. The evidence was seized during the search pursuant to that warrant.
¶2 The challenged evidence falls within the scope of the independent source exception to the exclusionary rule. We hold that the admission of evidence pursuant to the independent source exception complies with article I, section 7 of the Washington Constitution. Accordingly, we affirm.

I. FACTS AND PROCEDURAL HISTORY
¶3 Jerry Hanson reported to police that he had been held against his will for two days by Norman, Devennice, and Leandre Gaines[1] as they attempted to rob him. Hanson, a retired accountant, was addicted to crack cocaine and obtained his supply from the Gaineses. During Hanson's relationship with the Gaineses, Hanson began "loaning" them money. Vol. V, Verbatim Report of Proceedings (5 RP) at 406-409.[2] Over time, the Gaineses increased their demands. Hanson realized that he was rapidly running out of money and was leery of loaning more as they had not repaid earlier "loans."
¶4 On April 29, 2002, Norman and Devennice drove Hanson to his bank in downtown Seattle to withdraw money. As Norman and Devennice waited in the car, Hanson tried to escape them by turning into an alley rather than entering the bank. Devennice located Hanson, however, and forced him back into Norman's car, a white Chevy Caprice. They then drove to the house of Arletta Gaines. Once there, Hanson and Devennice went into the laundry room, whereupon Devennice began punching and beating Hanson with a steel rod.
¶5 Later that day, Hanson walked outside the house with Norman, Devennice, and Leandre. The Gaineses discussed getting more money from Hanson. Leandre pulled Hanson aside and showed Hanson a .357 magnum tucked into his waistband. Hanson testified that Leandre told him that "if he didn't get the money the following day, there was going to be a head shot, and he didn't care whether we were in the bank or out in the middle of the street." 5 RP at 447. Norman and Devennice then forced Hanson into Norman's car and drove to a house in SeaTac where they locked Hanson in the basement for the night.
¶6 The next morning, Norman drove Hanson to a Merrill Lynch office in Federal Way in an attempt to get money from an account Hanson had there. While in the Merrill Lynch office, Hanson locked himself inside a bathroom, hoping to escape. Norman came inside, obtained the bathroom key, and attempted to force Hanson back to the car. Hanson began yelling for help and was seen by a Merrill Lynch employee in the parking garage. Norman fled. The employee called the police, and Hanson was transported to a hospital in order to receive treatment for *995 injuries incurred during the previous days. While in the hospital, Hanson was interviewed by Seattle and Federal Way police.
¶7 The next day, May 1, 2002, one of the officers who had interviewed Hanson was on patrol in West Seattle and spotted Norman's car. The officer called for backup, conducted a felony stop of the vehicle, and arrested Norman and Devennice. In a search incident to the arrests, the police found a loaded Glock pistol in the unlocked glove box and an extra clip for the Glock under the driver's seat. One of the officers then took the keys out of the ignition and unlocked the trunk. Inside, the officer saw what appeared to be the barrel of an assault rifle and numerous rounds of ammunition. The officer immediately closed the trunk without disturbing its contents. The car ultimately was impounded.
¶8 The following day, a different Seattle police detective obtained a search warrant for Arletta's house, Norman's car, and the person of Leandre Gaines. The four-page affidavit in support of the warrant recited many of the above facts and included a single statement that the "Officer [ ] did observe the barrel of what he believed to be a rifle [in the trunk]." State's Ex. 18, at 3-4 (No. 74793-8). After obtaining the warrant and searching the house and car, the police recovered a military assault rifle and hundreds of rounds of ammunition from the trunk of Norman's car, as well as a pistol and crack cocaine.
¶9 The State charged Norman, Devennice and Leandre[3] with first degree kidnapping, first degree attempted robbery, and second degree assault. In addition, the State charged Norman with two counts of unlawful possession of a firearm in the second degree.
¶10 At trial, both Norman and Devennice moved to suppress evidence of the assault rifle and ammunition, arguing that the officer's initial search of the locked trunk was unlawful, thereby mandating exclusion of the evidence. The State asserted that exigent circumstances justified the search; officers who were present at the scene testified that they thought another victim or another suspect might be in the trunk. Alternatively, the State argued that the inevitable discovery exception to the exclusionary rule applied.
¶11 The court rejected the State's exigent circumstances argument but admitted the evidence under the inevitable discovery exception. The court reasoned that discovery of the rifle inevitably would have occurred during the police investigation following the Gaineses' arrests, given the prominent role that Norman's car had in the crimes reported by Hanson. The court found that, even if the initial, illegal search had not occurred, the police would have obtained the items in the trunk "through the course of predictable police procedures." Clerk's Papers (CP) at 78 (No. 74793-8). The court also found that even if the unlawfully obtained information in the affidavit regarding the assault rifle were disregarded, the warrant was still valid because the affidavit included Hanson's allegations and other facts that established probable cause for the search.
¶12 A jury convicted Norman of first degree attempted robbery with a firearm enhancement and both counts of unlawful possession of a firearm. The same jury convicted Devennice of first degree attempted robbery with a firearm enhancement and second degree assault with a deadly weapon enhancement.[4] Norman and Devennice appealed, and the Court of Appeals affirmed. Both then petitioned this court for review.[5]

*996 II. STANDARD OF REVIEW
¶ 13 "We review conclusions of law in an order pertaining to suppression of evidence de novo." State v. Mendez, 137 Wash.2d 208, 214, 970 P.2d 722 (1999). Unchallenged findings of fact entered following a suppression hearing are verities on appeal.[6]State v. O'Neill, 148 Wash.2d 564, 571, 62 P.3d 489 (2003).

III. ANALYSIS
¶ 14 Absent an exception to the warrant requirement, a warrantless search is impermissible under both article I, section 7 of the Washington Constitution and the fourth amendment to the United States Constitution. See State v. Johnson, 128 Wash.2d 431, 446-47, 909 P.2d 293 (1996).[7] Generally, evidence seized during an illegal search is suppressed under the exclusionary rule. See State v. Ladson, 138 Wash.2d 343, 359, 979 P.2d 833 (1999). In addition, evidence derived from an illegal search may also be subject to suppression under the fruit of the poisonous tree doctrine. See State v. O'Bremski, 70 Wash.2d 425, 428, 423 P.2d 530 (1967) (citing Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)).
¶ 15 Here, all parties agree that the initial glance into Norman's locked trunk was unlawful. While a police officer may conduct a search of the passenger cabin of a vehicle incident to the arrest of the occupants, see State v. Stroud, 106 Wash.2d 144, 152, 720 P.2d 436 (1986), it is well established that a warrant is required to search a locked trunk, see State v. White, 135 Wash.2d 761, 770-71, 958 P.2d 982 (1998). In addition, the trial court explicitly found that exigent circumstances did not justify the initial search. The evidence challenged here, however, was not seized during the initial glance into Norman's trunk. Instead, the police seized the rifle and ammunition during a subsequent search conducted pursuant to a warrant based on information obtained independently from the glance.
¶ 16 The independent source exception to the exclusionary rule has long been accepted both in this court, see State v. Warner, 125 Wash.2d 876, 888-89, 889 P.2d 479 (1995); O'Bremski, 70 Wash.2d at 428-29, 423 P.2d 530; and the United States Supreme Court, see Murray v. United States, 487 U.S. 533, 537, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988) (citing Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319 (1920)). However, we have never explicitly answered the precise question posed by this case: whether the independent source exception complies with article I, section 7 of the Washington Constitution. But see State v. Coates, 107 Wash.2d 882, 886-89, 735 P.2d 64 (1987) (impliedly approving of the exception under article I, section 7, as discussed infra at 997-98).
¶ 17 Under the independent source exception, evidence tainted by unlawful governmental action is not subject to suppression under the exclusionary rule, provided that it ultimately is obtained pursuant to a valid warrant or other lawful means independent of the unlawful action. See Warner, 125 *997 Wash.2d at 888-89, 889 P.2d 479; O'Bremski, 70 Wash.2d at 429, 423 P.2d 530. This result is logical. According to the plain text of article I, section 7, a search or seizure is improper only if it is executed without "authority of law." But a lawfully issued search warrant provides such authority. See Ladson, 138 Wash.2d at 350, 979 P.2d 833. Furthermore, the inclusion of illegally obtained information in a warrant affidavit does not render the warrant per se invalid, provided that the affidavit contains facts independent of the illegally obtained information sufficient to give rise to probable cause. See State v. Maxwell, 114 Wash.2d 761, 769, 791 P.2d 223 (1990); Franks v. Delaware, 438 U.S. 154, 171-72, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).
¶ 18 In this case, petitioners do not dispute that the search warrant was valid. See Washington State Supreme Court oral argument 3:42-4:09, 12:50-12:56, 18:00-18:56, 21:00-21:16 (Feb. 8, 2005), audio recording by TVW, Washington State's Public Affairs Network, available at http://www.tvw.org. Nor could they plausibly do so. The affidavit in support of the search warrant, see State's Ex. 18 (No. 74793-8), is four pages long and contains only one sentence regarding what was seen during the glance inside the trunk. Given that the police ultimately seized the rifle and ammunition from Norman's trunk pursuant to a valid search warrant, it logically follows that the trial court did not err in admitting those items into evidence.
¶ 19 Our decision in Coates, 107 Wash.2d 882, 735 P.2d 64, mandates this conclusion. In Coates, the defendant stabbed an off-duty police officer near the scene of a traffic accident. Id. at 883-84, 735 P.2d 64. Officers responding to the scene arrested Coates at his car but couldn't find the knife used in the stabbing. A detective sealed the car and towed it to the sheriff's office where it was impounded.
¶ 20 Later that evening, a sheriff's deputy, unaware that Coates had asserted his right to remain silent, questioned him regarding the location of the knife. Coates stated that it was underneath the front seat of his car. The detective obtained a search warrant for the car the next day. In the affidavit, the detective set forth details of the assault and disclosed Coates's statement to the deputy. The knife was found during a search of the vehicle.
¶ 21 Coates argued that because the information contained in his statement to the sheriff's deputy was obtained in violation of his right to remain silent, the knife should be suppressed under the exclusionary rule as fruit of the poisonous tree. Id. at 886, 735 P.2d 64. We unanimously rejected this argument.[8]
¶ 22 Writing for the court, Justice Dore conceded that if the warrant authorizing search of the car had been obtained solely on the basis of Coates's statement, it would have been defective. Id. at 887, 735 P.2d 64. However, he concluded that "a search warrant is not rendered totally invalid if the affidavit contains sufficient facts to establish probable cause independent of the illegally obtained information." Id. (discussing State v. Casal, 103 Wash.2d 812, 699 P.2d 1234 (1985); State v. Cord, 103 Wash.2d 361, 693 P.2d 81 (1985); State v. Cockrell, 102 Wash.2d 561, 689 P.2d 32 (1984)).
¶ 23 Based on this, Justice Dore reasoned that:
[T]he search warrant challenged in this case can be upheld despite the exclusion of defendant's illegally obtained statement if the remaining information in the warrant affidavit independently established probable cause to believe the weapon was in his car. This proposition does not run afoul of the court's stated view that Const. art. 1, § 7 serves to protect personal privacy rights, rather than curb governmental actions.
Coates, 107 Wash.2d at 888, 735 P.2d 64. We concluded that the probable cause requirement for the warrant was satisfied. Id. at 889, 735 P.2d 64. As such, the subsequent search and seizure were legal, and the knife was admissible as a product of the independent and lawful search. Id.
*998 ¶ 24 Coates controls the disposition of the present case. In both cases, persons made allegations of criminal activity sufficient to give rise to probable cause to search an automobile. In both cases, a constitutional violation occurred that revealed that a weapon was inside an automobile. In neither case was the evidence immediately seized. Instead, in both cases, the police sought search warrants based on information independent of the violation, although each recited the earlier unlawful disclosures. In both cases, the police seized the challenged evidence during a search conducted pursuant to the warrant. Finally, in both cases, the search warrants were valid because probable cause existed to search the respective automobiles absent the impermissibly obtained information.
¶ 25 Nevertheless, petitioners argue that exclusion of the trunk's contents is mandatory and that allowing a later warrant to authorize introduction of evidence first discovered by the police as a result of an illegal act would vitiate constitutional protections. Assuming application of some exclusionary remedy is appropriate, such remedy was provided here by striking all references to the initial, illegal search of the trunk from the warrant affidavit when assessing whether probable cause existed to issue the warrant. See Maxwell, 114 Wash.2d at 769, 791 P.2d 223; Coates, 107 Wash.2d at 887, 735 P.2d 64. This remedy finely balances the rights of the accused with society's interest in prosecuting criminal activity and ensures that the State is placed in neither better nor worse position as a result of the officers' improper actions.
¶ 26 Petitioners also argue that the State must prove the police would have sought the warrant for Norman's trunk absent the illegal search, citing Murray v. United States, 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472, for support. In Murray, federal agents raided a warehouse suspected of containing marijuana without a warrant. Id. at 535, 108 S.Ct. 2529. Inside, the agents observed in plain view a large number of burlap-wrapped bales. They left the warehouse without disturbing the bales but kept the warehouse under surveillance and reentered several hours later after obtaining a warrant. In procuring the warrant, the agents did not mention the prior entry, nor did they rely on any observations made during that entry. Upon reentering the warehouse, the agents seized 270 bales of marijuana.
¶ 27 Defendants sought to have all evidence seized from the warehouse suppressed, but the trial court denied the motion and the First Circuit Court of Appeals affirmed. Id. at 536, 108 S.Ct. 2529. The Supreme Court vacated the First Circuit decision and remanded to the trial court for further fact-finding. Id. at 543-44, 108 S.Ct. 2529. The Court was concerned that the trial court had failed to find that the agents would have sought a warrant absent the prior entry into the warehouse. Id. at 543, 108 S.Ct. 2529. The Court reasoned that such a finding was integral in ensuring that the lawful seizure of the contents of the warehouse was "genuinely independent" of the earlier illegal search. Id. at 542, 108 S.Ct. 2529.
¶ 28 While Murray is controlling authority, it does not compel the result urged by petitioners. At the CrR 3.6 hearing in the present case, the trial court found that the police would have obtained the items in the trunk "through the course of predictable police procedures." CP at 78 (No. 74793-8). This finding strongly, and we believe adequately, supports the conclusion that the police would have sought a search warrant for Norman's trunk based on facts gathered independently from the improper glance inside the trunk. Particularly noteworthy is the fact that the vehicle played a central role in the crimes reported by Hanson. See also United States v. Mulder, 889 F.2d 239, 241 (9th Cir.1989) (denying motion to suppress evidence, partly on the grounds that there was "ample evidence . . . that the search warrant was sought on the basis of probable cause developed independently of the [improper police action,]" not because of the improper action). Accordingly, the trial court did not err by denying petitioners' motion to suppress.

IV. CONCLUSION
¶ 29 The admission of evidence under the independent source exception to the exclusionary rule complies with article I, section 7 of the Washington Constitution. Here, probable *999 cause existed to search the trunk independent of the initial, illegal search. The trial court found that the police would have sought a warrant for the trunk even absent the initial, illegal search. The evidence ultimately was seized pursuant to a lawful warrant and is thus admissible.
¶ 30 Affirmed.
WE CONCUR: ALEXANDER, C.J., C. JOHNSON, MADSEN, SANDERS, BRIDGE, CHAMBERS, OWENS and FAIRHURST, JJ.
NOTES
[1] For the remainder of this opinion, first names of the Gaines family members will be used for clarity where necessary. Norman and Leandre Gaines are brothers, Devennice Gaines is their cousin, and Arletta Gaines is Devennice's mother.
[2] The verbatim reports of proceedings are identical for each cause number in this case as both petitioners were tried together.
[3] Leandre accepted a plea bargain prior to trial, pleading guilty to drug possession charges. He is not a party to this appeal.
[4] The firearm enhancements to the first degree attempted robbery convictions were predicated on Leandre's threat to Hanson while displaying the .357 magnum. Norman's unlawful possession of a firearm convictions were predicated on the presence of the Glock and the assault rifle in his car. The deadly weapon enhancement to Devennice's second degree assault conviction was predicated on his use of the steel bar to beat Hanson.
[5] We originally granted review on the issue of whether the inevitable discovery exception to the exclusionary rule complies with article I, section 7. See Order of Sept. 8, 2004, noted at 152 Wash.2d 1001. We find that the facts of this case do not require us to decide that issue, thus we do not address it further. See State v. Coates, 107 Wash.2d 882, 887, 735 P.2d 64 (1987) (observing that inevitable discovery doctrine is applicable only if evidence has been seized illegally).
[6] Both petitioners approved of the findings of fact entered by the trial court subsequent to the CrR 3.5 and 3.6 hearing.
[7] Article I, section 7 of the Washington Constitution provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

The fourth amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
Petitioners focus their arguments on whether the admission of the challenged evidence violates article I, section 7, and we decide this case under that provision. To the extent we discuss pertinent federal law, such discussion is subsumed into our state constitutional analysis. This is appropriate given that "[i]t is well settled that article I, section 7 of the Washington Constitution provides greater protection to individual privacy rights than the Fourth Amendment to the United States Constitution." State v. Jones, 146 Wash.2d 328, 332, 45 P.3d 1062 (2002).
[8] Four justices concurred or dissented on other grounds, but all agreed with the majority's resolution of this issue. See Coates, 107 Wash.2d at 893, 735 P.2d 64 (Goodloe, J., concurring); 107 Wash.2d at 896, 735 P.2d 64 (Pearson, C.J., and Utter and Brachtenbach, JJ., dissenting).