# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51473-7-II |
| Respondent, | |
| v. | |
| LYNN MEREDITH LEWIS, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, P.J. — Lynn Lewis appeals his convictions for possession of a controlled substance with intent to deliver, which included a school bus route stop enhancement, possession of ephedrine or pseudoephedrine with intent to manufacture methamphetamine, and seven counts of unlawful possession of a firearm in the first degree.

Lewis argues that the trial court erred in denying his motion to suppress evidence collected from his cell phone. He contends that the search warrant affidavit contained unlawfully obtained information which, after excision, did not demonstrate probable cause. Lewis also argues that the trial court erred by failing to give a requested jury instruction that the jury could only deliberate when all twelve jurors were present.

In a statement of additional grounds (SAG), Lewis further asserts that he received ineffective assistance of counsel when his attorney failed to take certain actions. He also asserts that the failure to arrest the owner of the house where drugs were found implicated his rights under the First and Fourth Amendments of the United States Constitution.

We affirm.

FACTS

I.    ARREST

The police learned that Stacy Kinley sold methamphetamine. In October 2017, the police procured a search warrant for Kinley's house, which was owned by her mother, Sharon Cowan. The warrant also allowed the police to search Kinley's cell phone.

The police set up a ruse to get Kinley out of her house. They asked her to meet them at a local parking lot. Kinley arrived with an unknown man, later identified as Lewis. At some point during the police's talks with Kinley and Lewis, the police took Lewis's cell phone off his lap and read his text messages.

During their interactions with the police, Kinley and Lewis accused each other of dealing methamphetamine. When the police searched Kinley's house, they found methamphetamine, substances used to manufacture methamphetamine, and numerous firearms. The police then arrested both Kinley and Lewis.

II.    SEARCH WARRANT

In December, the police sought a search warrant for Lewis's cell phone. The supporting affidavit included many of the above facts and also included the following additional information.

When Kinley and Lewis arrived at the location of the ruse, the police spoke to both individuals separately. Kinley told the police that she and Lewis had lived together for a few months, during which time she sold methamphetamine for him. She said that Lewis was the primary seller. The police informed Kinley that they would be searching her house, and she said that when they searched her bedroom, which she shared with Lewis, they would find methamphetamine. The police then seized Kinley's cell phone.

Lewis told the police that he was unaware of drug sales or drug use at Kinley's house. Lewis said that he lives with Kinley about four days per week. The police seized Lewis's phone.

Subsequently, the police "viewed text messages in both [Kinley's and Lewis's] cellular phones . . . [and] observed text messages in both phones, which supported the suspicion that both Kinley and Lewis [were] selling methamphetamine." Clerk's Papers (CP) at 46.

The police then searched Lewis and found methamphetamine. Lewis stated, "I guess I have dope on me." CP at 46.

After detaining Kinley and Lewis, the police searched Kinley's house. In the room that Kinley and Lewis shared, the police found methamphetamine and a pipe. The police also found packaging material, digital scales, money, precursors to methamphetamine production, ephedrine pills, and nine firearms in the house. As a whole, the items were "indicative of methamphetamine production and sales." CP at 48.

After searching the house, the police arrested Kinley and Lewis. The police then read them their *Miranda*[1] rights, and both waived their rights and agreed to speak. Lewis stated that he knew Kinley sold methamphetamine from their bedroom. He also knew that methamphetamine was in the bedroom and admitted to smoking methamphetamine the previous evening.

Kinley told the police that Lewis sold methamphetamine both inside and outside of the house. She stated that Lewis owned two scales. Kinley described the scales. Kinley also stated that Lewis knew of the firearms and that she believed Lewis was stealing and then selling them. When the police searched the house, they found scales matching Kinley's description.

The police then contacted Cowan. Cowan said that Lewis had recently offered to sell her firearms.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Based on the above information and their training, knowledge, and experience, the police executed an affidavit in support of a search warrant. They stated that they had probable cause to believe that Lewis's cell phone contained further evidence of drug use and drug distribution.

The judge found that probable cause existed and issued the search warrant. The police then searched Lewis's phone and found numerous text messages and photos implicating him, Kinley, and others in the charged offenses.

III.     PROCEEDINGS

The State charged Lewis with possession of a controlled substance with intent to deliver with a school bus route stop enhancement, possession of ephedrine or pseudoephedrine with intent to manufacture methamphetamine, and seven counts of unlawful possession of a firearm in the first degree.

Before trial, Lewis moved to suppress the evidence obtained from the search of his cell phone. After a hearing, the court denied his motion.

At the conclusion of the evidence, Lewis proposed a modified jury instruction of 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 1.04, at 26 (4th ed. 2016) (WPIC). The modified instruction included the phrase: "You [the jury] may only deliberate when all twelve jurors are present." CP at 66. The court refused to give the modified instruction. Instead, the court gave an unmodified WPIC 1.04 jury instruction, which stated:

> As jurors, you have a duty to discuss the case with one another and to deliberate in an effort to reach a unanimous verdict. Each of you must decide the case for yourself, but only after you consider the evidence impartially with your

fellow jurors. During your deliberations, you should not hesitate to re-examine your own views and to change your opinion based upon further review of the evidence and these instructions. You should not, however, surrender your honest belief about the value or significance of evidence solely because of the opinions of your fellow jurors. Nor should you change your mind just for the purpose of reaching a verdict.

CP at 153.

The jury found Lewis guilty on all counts and the school bus route stop enhancement. The court then polled the jury, and each juror said that the verdicts represented his or her individual verdicts. Lewis appealed.

Subsequently, the trial court entered findings of fact and conclusions of law from the suppression hearing. The court found that even after excising the references to the information obtained by the illegal search of Lewis's cell phone, "there [was] still sufficient information contained within for the reviewing magistrate to find Probable Cause." CP at 255.

ANALYSIS

I.    CELL PHONE SEARCH

Lewis argues, and the State concedes, that the initial search of his cell phone, when the officer took it off his lap and searched it without a warrant, violated his rights under the Fourth Amendment of the United States Constitution and article I, section 7 of the Washington Constitution. We agree. However, we agree with the State that the subsequent search of the cell phone pursuant to the search warrant was valid.

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution prohibit warrantless searches and seizures unless an exception to the warrant requirement applies. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009).

A search warrant can be issued only if there is a determination of probable cause. *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999). "Probable cause exists if the affidavit in support of the warrant sets forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime can be found at the place to be searched." *Thein*, 138 Wn.2d at 140. A nexus must exist between the criminal activity and the item to be seized, and between the item to be seized and the place that will be searched. *Thein*, 138 Wn.2d at 140.

The exclusionary rule generally requires that evidence obtained from an illegal search and seizure be suppressed. *State v. Gaines*, 154 Wn.2d 711, 716-17, 116 P.3d 993 (2005). This suppression includes the initially seized evidence and any fruit of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471, 484-85, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963); *Gaines*, 154 Wn.2d at 717.

However, the independent source doctrine provides that evidence that is tainted by unlawful governmental action is not subject to suppression if it was obtained pursuant to a valid warrant or other lawful independent means. *Gaines*, 154 Wn.2d at 718. In addition, *State v. Maddox*, 152 Wn.2d 499, 508, 98 P.3d 1199 (2004), allows for a search warrant affidavit to be reevaluated for probable cause after striking illegally obtained information.

When applying the independent source doctrine, the determinative question is whether the police discovered the challenged evidence through a source independent from the initial illegality. *State v. Betancourth*, 190 Wn.2d 357, 365, 413 P.3d 566 (2018). "To determine whether challenged evidence truly has an independent source, [we] ask whether illegally obtained information affected (1) the magistrate's decision to issue the warrant or (2) the decision of the state agents to seek the warrant." *Betancourth*, 190 Wn.2d at 365. If the illegal search did not

contribute to the issuance of the warrant, "then the evidence is admissible through the lawful warrant under the independent source doctrine." *Betancourth*, 190 Wn.2d at 365.

In *Gaines*, police officers unlawfully searched a suspect's car without a warrant and discovered a firearm. 154 Wn.2d at 714. They did not seize the firearm at the time. *Gaines*, 154 Wn.2d at 714. Instead, the police obtained a search warrant for the car, conducted a search, and then seized it. *Gaines*, 154 Wn.2d at 714-15. The warrant contained information learned from the unlawful search and other information. *Gaines*, 154 Wn.2d at 714-15.

The court struck all references to the unlawful search from the search warrant affidavit. *Gaines*, 154 Wn.2d at 720. The court concluded, after striking such information, the search warrant still supported probable cause. *Gaines*, 154 Wn.2d at 722. Therefore, the court concluded that the search pursuant to the warrant was valid. *Gaines*, 154 Wn.2d at 722.

The State concedes that the initial search of Lewis's cell phone was unlawful. We accept the State's concession. Therefore, we strike all references to information obtained from that search in the warrant.[2]

The remaining portion of the affidavit nonetheless supports probable cause. The affidavit included the following information.

The police, through an agent, purchased methamphetamine from Kinley. When the police later discussed this transaction with Kinley, she implicated Lewis, saying that she sold the methamphetamine at his direction. Kinley offered details about items that the police would find

---

[2] Because it is unclear whether Lewis was accurately identified as a contact in Kinley's phone, the affidavit's discussion of information obtained from Kinley's phone cannot be separated from its discussion of the unlawful information obtained from Lewis's phone. Therefore, we also do not consider the portion of the affidavit discussing information obtained from Kinley's cell phone.

when they searched her house. Lewis admitted he lived at the house for a majority of the time. The police's subsequent search corroborated Kinley's statements.

During the police's discussions with Lewis, he initially denied being aware of drug sales or drug use. Yet when the police searched him, they found methamphetamine on his person. Lewis then stated, "I guess I have dope on me." CP at 46. Lewis later retracted his previous denial, admitting both that he smoked methamphetamine and that he knew methamphetamine was located in the bedroom of the house. Lewis also said that Kinley sold methamphetamine.

During the police's search of the house, they discovered methamphetamine, a pipe, and a scale in the bedroom that Kinley and Lewis shared. They also discovered in the residence packaging material, digital scales, money, precursors to methamphetamine production, ephedrine pills, and nine firearms.

In sum, Kinley implicated Lewis in selling methamphetamine. Lewis's lies to the police and then subsequent retraction did nothing to quell the suspicion that he was in fact selling methamphetamine. And the police found items that were indicative of methamphetamine production and sales in the house in which he stayed.

Thus, we conclude that the police had probable cause to believe Lewis was dealing methamphetamine. Based upon their knowledge and experience, the police believed that Lewis's phone contained further evidence of drug use and drug distribution.

Based on all of the above, we conclude that the trial court did not err by denying Lewis's motion to suppress because the search of Lewis's cell phone pursuant to the search warrant was valid.[3]

---

[3] This conclusion is in line with both *Gaines* and *State v. Smith*, 113 Wn. App. 846, 55 P.3d 686 (2002). Lewis attempts to distinguish these cases; however, the distinctions Lewis draws are legally insignificant.

II.    PROPOSED JURY INSTRUCTION

Lewis argues that the trial court erred when it refused to give his proffered modified WPIC 1.04 instruction, which included the phrase: "'You may only deliberate when all twelve jurors are present.'"  Br. of Appellant at 20 (quoting CP at 66).  Lewis contends that the trial court's refusal to give the instruction violated his right to a unanimous jury verdict.  We disagree.

"[W]e review a trial court's choice of jury instructions for an abuse of discretion."  *State v. Hathaway*, 161 Wn. App. 634, 647, 251 P.3d 253 (2011).  Jury instructions are appropriate if they allow a defendant to argue his or her theory of the case, are not misleading, and when read as a whole properly state the applicable law.  *State v. Aguirre*, 168 Wn.2d 350, 363-64, 229 P.3d 669 (2010).  It is not error to refuse to give a specific instruction when a more general instruction adequately explains the law and allows each party to argue its theories of the case.  *Hathaway*, 161 Wn. App. at 647.

In a criminal prosecution, an impartial jury must render a unanimous verdict.  WASH. CONST. art. I, §§ 21, 22; *State v. Lamar*, 180 Wn.2d 576, 583, 327 P.3d 46 (2014).  Additionally,

> "The requirement that 12 persons reach a unanimous verdict is not met unless those 12 reach their consensus through deliberations which are the common experience of all of them.  It is not enough that 12 jurors reach a unanimous verdict if 1 juror has not had the benefit of the deliberations of the other 11. . . ."
> Thus, a unanimous jury vote does not necessarily mean that unanimity in the constitutional sense has been attained.  Rather, it is a consensus reached after . . . all of the jurors exchange their individual perceptions, experiences, and assessments.

*Lamar*, 180 Wn.2d at 585 (quoting *People v. Collins*, 17 Cal. 3d 687, 693, 552 P.2d 742, 131 Cal. Rptr. 782 (1976)).

In *Lamar*, the jury began deliberations on a Friday afternoon but did not reach a verdict. 180 Wn.2d at 580.  The following Monday, a juror became too sick to continue, and the parties agreed to replace that juror with the alternate.  *Lamar*, 180 Wn.2d at 580.  The court then instructed

9

the newly constructed jury to bring the new juror "up to speed" regarding the Friday deliberations. *Lamar*, 180 Wn.2d at 580. "The court did not reinstruct the jurors on their duty to deliberate together in an effort to reach unanimity . . . nor did the court instruct the jury to disregard prior deliberations and begin anew." *Lamar*, 180 Wn.2d at 581.

The jury acquitted the defendant on one count and found him guilty on the other. *Lamar*, 180 Wn.2d at 581. The trial court then polled the jury, and each juror said that the jury's verdicts reflected their individual verdicts. *Lamar*, 180 Wn.2d at 581.

On appeal, the defendant argued that the trial court's instruction to bring the new juror up to speed violated his right to an impartial jury. *Lamar*, 180 Wn.2d at 581. The court agreed and reversed his conviction. *Lamar*, 180 Wn.2d at 589.

In reaching its decision, the court rejected the State's argument that the jury polling showed that unanimity was in fact attained. *Lamar*, 180 Wn.2d at 587-88. The court stated:

> Polling a jury, when properly carried out, is generally evidence of jury unanimity. However, polling may not be effective to establish that a defendant's right to unanimity was secured if the record affirmatively shows a reason to seriously doubt that the right has been safeguarded.

*Lamar*, 180 Wn.2d at 587-88. The court concluded that, based on the erroneous jury instruction, serious doubt existed.

Unlike the erroneous instruction in *Lamar*, the jury instruction here adequately informed the jury about the requirements of a unanimous verdict. The instruction required that the jurors "discuss the case with one another" and that they "consider the evidence impartially with [their] fellow jurors." CP at 153. While this instruction was not as explicit as Lewis's requested instruction, we conclude that it adequately explained the law. Furthermore, the court polled the jury, and the record shows no reason to doubt that Lewis received a unanimous jury verdict.

SAG

I.     INEFFECTIVE ASSISTANCE OF COUNSEL

Lewis asserts that he received ineffective assistance of counsel when his counsel failed to introduce a letter into evidence, failed to call the State's confidential informant to testify, and failed to call another witness to testify.  We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution guarantee the right to effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011).

We review claims of ineffective assistance of counsel de novo.  *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).  To prevail on a claim of ineffective assistance of counsel, the defendant must show both (1) that defense counsel's representation was deficient and (2) that the deficient representation prejudiced the defendant.  *Grier*, 171 Wn.2d at 32-33.  If either prong is not satisfied, the defendant's claim fails.  *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 673, 101 P.3d 1 (2004).

There is a strong presumption that defense counsel's conduct was not deficient.  *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).  Because of this presumption, "the defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel."  *McFarland*, 127 Wn.2d at 336.

We will not consider matters outside the record on direct appeal.  *State v. Linville*, 191 Wn.2d 513, 525, 423 P.3d 842 (2018).  Issues that require consideration of evidence or facts not in the trial record are more properly the subject of a personal restraint petition.  *Linville*, 191 Wn.2d at 525.

Lewis's assertion about his counsel's failure to introduce a letter in his possession relies on evidence outside the record. Accordingly, we cannot review his claim.

Lewis's assertions related to his counsel's failure to call various witnesses are a challenge to his counsel's trial tactics. Accordingly, we reject his claims.

II. FAILURE TO ARREST COWAN

Lewis appears to assert that the fact that "Ms. Cowan was never arrested" violated his First and Fourth Amendment rights. SAG at 2. Although RAP 10.10 does not require Lewis to refer to the record or cite to authority, it does require him to inform us "of the nature and occurrence of alleged errors." RAP 10.10(c). Lewis's assertion of error is too vague for us to understand the nature and occurrence of the alleged error. Therefore, we do not reach it.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, P.J.

We concur:

_____
Sutton, J.

_____
Glasgow, J.

12