## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) ) ) | No. 76716-0-I |
| MARTIN DAVID PIETZ JR., | ) ) | DIVISION ONE |
| Petitioner. | ) ) | UNPUBLISHED OPINION |
| | ) | FILED: August 12, 2019 |

LEACH, J. — Martin David Pietz collaterally challenges his 2013 conviction for murder in the second degree. He claims that the trial court's denial of his request to suppress evidence violated his constitutional protections against unlawful search and seizure. While the exclusionary rule generally requires the suppression of evidence seized during an illegal search, an independent source exception to this rule applies if (1) the magistrate did not base his decision to issue a warrant on illegally obtained information included in the affidavit and (2) the State would have sought a warrant regardless of the illegal search. Because the trial court did not make an express finding about the investigating officer's motivation as Murray v. United States[1] requires, we remand to the trial court for a reference hearing to resolve this limited issue.

---

[1] 487 U.S. 533, 539-40, 108 S. Ct. 2529, 101 L. Ed. 2d 472 (1988).

FACTS

On January 28, 2006, at 10:20 p.m., Pietz reported his wife, Nicole Pietz, as a missing person.[2] He told a responding officer that she had been asleep when he got home the night before. And when he woke up that morning, she was gone. He stated that Nicole could have been wearing a white gold tennis bracelet when she went missing. Nicole's sister testified that Nicole always wore a tennis bracelet that Pietz gave her.

On February 6, 2006, someone found Nicole's body in a wooded area in Burien. Forensic pathologist Brian Mazrim went to the scene. He determined that Nicole had likely been dead for a week. She had bruises on her face, elbows, thighs, knee, calves, feet, pelvis, and neck caused by blunt force. She also had hemorrhaging on both sides of her spine and in her neck and eyes. Mazrim concluded that Nicole had died due to manual strangulation. No tennis bracelet was recovered from the scene.

On March 21, 2012, police arrested Pietz on his way into work at Chase Bank. On March 23, Amber Cowart, Pietz's coworker, called Detective Mike Mellis. She told Mellis that in October 2011, Pietz had asked her to appraise his deceased wife's tennis bracelet. Cowart stated that when she placed the bracelet on her wrist to get an idea of the length of it, Pietz stated, "Oh, my

[2] For purposes of clarity, this opinion refers to Martin David Pietz as Pietz and Nicole Pietz as Nicole.

gosh. . . . That's so weird. . . . You're wearing my dead wife's bracelet." Cowart took the bracelet home, made some notes about its description and value on a sticky note, and then returned the bracelet to Pietz with the note. Cowart called Mellis again the next day to say that she had spoken with the assistant manager of the bank, Karla Hansen, that morning. Cowart had asked Hansen about the note because Cowart knew that Hansen had boxed up Pietz's belongings from his desk after his arrest. Hansen told Cowart that the sticky note was among Pietz's belongings in his desk.

Mellis states in his follow-up report that he went to Chase Bank on March 24, 2012, to speak with Hansen. His affidavit for a search warrant states that Hansen confirmed she had found a sticky note with Cowart's handwriting on it in Pietz's desk. In a pretrial interview, Hansen stated she did not remember whether she had the note waiting for Mellis or whether she retrieved it from the boxes of Pietz's belongings after Mellis arrived at the bank. Mellis reported that he asked Hansen to show him the note, which she did, offered to photocopy it, and gave him the copy. "[He] took the photocopy and went to [his] van to start writing a search warrant affidavit. [He] quickly knew that [he] would not have enough time to get a warrant and serve it before the branch closed for the day (1330 hrs on Saturday)."

Mellis reported that he returned to the bank, and Hansen confirmed that she had placed all of Pietz's property into three or four boxes. She took him back to the employee-only area and showed him the stack of boxes. He asked her whether she was aware of what Cowart had told him about the appraisal of a bracelet belonging to Pietz. Hansen responded that she did not know, and Cowart had asked her to look only for a sticky note that morning. He then asked Hansen whether Pietz had ever talked with her about a woman's bracelet. She said he had not, but when she was cleaning out his desk, she had found what she thought was a man's bracelet. Mellis asked if she was sure it was a man's bracelet and, "without [his] prompting," she opened one of the boxes with Pietz's property and retrieved a bracelet that she showed Mellis. She then returned the bracelet to the box. He told her that he would be applying for a search warrant.

When Pietz's trial counsel interviewed Hansen before trial, Hansen's account of her meeting with Mellis differed from Mellis's in one critical respect. Hansen stated that when she told Mellis she had seen a bracelet among Pietz's belongings, Mellis "asked if he could see it." Consistent with Mellis's report, she stated that she showed him the bracelet and then returned it to the box.

Mellis completed his affidavit for a search warrant on March 25. It included the information that Cowart and Hansen told him and that he had seen

the sticky note and bracelet. A judge issued a warrant that same day. Mellis executed the warrant on March 26.

The State charged Pietz with second degree murder. Before trial, Pietz asked the court for a Franks[3] hearing and to suppress the bracelet from evidence. He did not ask the court to suppress the sticky note. The trial court denied his request for a Franks hearing and did not rule on the suppression issue. It explained that even if it held a Franks hearing, decided that Mellis intentionally misled the court about Hansen offering to show him the bracelet, and struck from the affidavit that Mellis saw the bracelet, the affidavit would still establish probable cause.

A jury convicted Pietz as charged. Pietz appealed to this court. In an unpublished opinion, this court affirmed Pietz's conviction on grounds Pietz does not raise in this personal restraint petition (PRP).[4] The Washington Supreme Court denied his petition for review. He then filed his PRP, which this court denied. Our Supreme Court granted discretionary review of this court's decision and remanded for this court to consider the merits of his PRP.

---

[3] Franks v. Delaware, 438 U.S. 154, 171-72, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978) (holding that falsehoods in a warrant affidavit may invalidate the warrant if the defendant shows that they are material and made in reckless disregard for the truth).

[4] State v. Pietz, No. 71162-8-I, slip op. at 1 (Wash. Ct. App. Oct. 12, 2015) (unpublished), http://www.courts.wa.gov/opinions/pdf/711628.pdf, review denied, 185 Wn.2d 1020 (2016).

## STANDARD OF REVIEW

An appellate court will reach the merits of a PRP only after the petitioner makes a threshold showing of either (1) constitutional error that caused him actual and substantial prejudice or (2) nonconstitutional error constituting a fundamental defect that resulted in a complete miscarriage of justice.[5] The petitioner must make these showings by a preponderance of the evidence.[6] Claims of unlawful search or seizure and ineffective assistance of counsel are claimed constitutional errors.

## ANALYSIS

### Suppression of Evidence

First, Pietz contends that the trial court should have suppressed evidence of the sticky note and the bracelet because Mellis seized them as the result of an unlawful search. Assuming that the search and seizure of the sticky note and bracelet were unlawful, the State has satisfied the first prong of the independent source exception to the exclusionary rule. But resolution of the second prong requires remand.

A warrantless seizure is per se unreasonable under the Fourth Amendment to the United States Constitution and article I, section 7 of the

---

[5] In re Pers. Restraint of Davis, 152 Wn.2d 647, 671-72, 101 P.3d 1 (2004).

[6] In re Pers. Restraint of Yates, 177 Wn.2d 1, 17, 296 P.3d 872 (2013).

Washington Constitution unless one of the exceptions to the warrant requirement applies.[7] Generally, evidence seized during an illegal search is suppressed under the exclusionary rule. In addition, "[w]hen an unconstitutional search or seizure occurs, all subsequently uncovered evidence becomes fruit of the poisonous tree and must be suppressed."[8] But the United States Supreme Court and the Washington Supreme Court have recognized an independent source exception to the exclusionary rule.[9]

Under this exception, "evidence tainted by unlawful governmental action is not subject to suppression under the exclusionary rule, provided that it ultimately is obtained pursuant to a valid warrant or other lawful means independent of the unlawful action."[10] The exception applies if (1) the magistrate did not base a decision to issue a warrant on illegally obtained information included in the

---

[7] State v. Williams, 102 Wn.2d 733, 736, 689 P.2d 1065 (1984) (citing Coolidge v. New Hampshire, 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971)). The Fourth Amendment, made applicable to the states through the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Article I, section 7 of the Washington Constitution states that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." Article I, section 7 places a greater emphasis on the right to privacy than the Fourth Amendment. State v. Young, 123 Wn.2d 173, 179, 867 P.2d 593 (1994).

[8] State v. Ladson, 138 Wn.2d 343, 359, 979 P.2d 833 (1999).

[9] State v. Gaines, 154 Wn.2d 711, 717, 116 P.3d 993 (2005).

[10] Gaines, 154 Wn.2d at 718.

affidavit and (2) the State would have sought a warrant regardless of the illegal search.[11]

Pietz contends that the State must satisfy the prongs of the independent source doctrine by clear and convincing evidence. He asserts that although the federal courts require that the State must prove an independent source by a preponderance of the evidence, Washington, like New Jersey, requires that the State prove an independent source by clear and convincing evidence. The only Washington case that Pietz cites to support this proposition is State v. Redmond.[12] There, on direct appeal, our Supreme Court examined whether clear and convincing evidence showed a witness was able to make an in-court identification of Redmond independently of the police lineup.[13] But because Pietz has the burden in this PRP of proving a constitutional error that caused him actual and substantial prejudice, we do not consider what the State must prove at trial or on direct appeal to establish an independent source.

A. *The Magistrate's Decision To Issue a Warrant*

Pietz contends that the magistrate would not have issued a warrant but for the unlawful information in Mellis's affidavit for a search warrant. We disagree.

---

[11] State v. Miles, 159 Wn. App. 282, 294, 296-97, 244 P.3d 1030 (2011).
[12] 75 Wn.2d 62, 448 P.2d 938 (1968).
[13] Redmond, 75 Wn.2d at 64-66.

A warrant affidavit that contains illegally obtained information is not per se invalid if it contains facts independent of the illegally obtained information sufficient to establish probable cause.[14] This inquiry under the first prong of the independent source doctrine is similar to that under Franks, which allows a court to consider whether probable cause exists only after striking any reference to information gained from any illegal search.[15] "Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in a belief that an offense has been committed. Probable cause is not a technical inquiry."[16] This determination rests on "the totality of facts and circumstances within the officer's knowledge at the time of the arrest."[17]

Cowart called Mellis on March 24, 2012, and told him that bank employee Hansen had seen among Pietz's personal belongings at the bank the sticky note on which she had written her appraisal conclusions about the bracelet. And before Mellis asked Hansen to see the note during their meeting at the bank, she told him that she had found a sticky note with Cowart's handwriting in Pietz's desk. This is sufficient to establish probable cause for a warrant to seize the

[14] Gaines, 154 Wn.2d at 718.
[15] State v. Spring, 128 Wn. App. 398, 405, 115 P.3d 1052 (2005).
[16] State v. Terrovona, 105 Wn.2d 632, 643, 716 P.2d 295 (1986).
[17] State v. Fricks, 91 Wn.2d 391, 398, 588 P.2d 1328 (1979).

sticky note. Thus, whether Hansen had the note waiting for Mellis or whether she retrieved it after he arrived at the bank does not require suppression of the note. If the fact that Mellis read the note was stricken from the affidavit, the affidavit would still contain sufficient evidence to allow the magistrate to find probable cause for a warrant to seize it.

Similarly, before Hansen showed Mellis the bracelet, she told Mellis that she had found a bracelet among Pietz's belongings. This is sufficient to establish probable cause for a warrant to seize the bracelet. Whether Hansen showed Mellis the bracelet without prompting or whether Mellis asked Hansen to show it to him does not require suppression of the bracelet. If the fact that Mellis saw the bracelet was stricken from the affidavit, the affidavit would still contain sufficient evidence to allow the magistrate to find probable cause for a warrant to seize it.

Pietz does not show that the State presented insufficient evidence to satisfy the first prong of the independent source doctrine.

*B. Mellis's Decision To Seek a Warrant Regardless of Any Alleged Illegal Search*

Pietz next asserts that because the trial court did not explicitly find that Mellis would have sought a search warrant regardless of his alleged unlawful search of the sticky note and the bracelet, the State did not meet its burden to show application of the independent source doctrine. We agree.

Our Supreme Court has stated that Murray "'is [the] controlling authority' defining the contours of the independent source exception."[18] In Murray, the United States Supreme Court stated, "[In addition] to the normal burden of convincing a magistrate that there is probable cause," the independent source doctrine requires that the State satisfy "the much more onerous burden of convincing a trial court that no information gained from the illegal [search] affected either the law enforcement officers' decision to seek a warrant or the magistrate's decision to grant it."[19] The Court remanded because the district court did not "explicitly find that the agents would have sought a warrant if they had not earlier entered the warehouse [and thus conducted an unlawful search]."[20] It instructed the appellate court to remand to the district court with instructions to make a determination about this issue.[21]

As a preliminary issue, Pietz asserts a single articulation of the motivation prong of the independent source doctrine, claiming a court must look to what did happen as opposed to what would have happened. By contrast, he contends that the inevitable discovery doctrine, which our Supreme Court has held is incompatible with Washington's constitution,[22] involves speculative

---

[18] Miles, 159 Wn. App. at 292 (alteration in original) (quoting Gaines, 154 Wn.2d at 721).
[19] Murray, 487 U.S. at 540.
[20] Murray, 487 U.S. at 543.
[21] Murray, 487 U.S. at 543-44.
[22] State v. Winterstein, 167 Wn.2d 620, 624, 220 P.3d 1226 (2009).

determinations about what would have happened. He claims that for the State to prevail, the State must establish that Mellis's "decision to seek the warrant [was] not motivated by the previous unlawful search." He maintains that in this court's order dismissing his PRP, it erroneously used the standard applicable to the inevitable discovery doctrine because it examined whether "Mellis would have sought the warrant even without the information from the allegedly unlawful search."[23] He asserts this standard is incompatible with this court's holding in State v. Miles.[24] There, this court remanded for the trial court to determine whether the motivation prong of the independent source doctrine was satisfied.[25] But Miles explained that "Murray uses two different formulations of the motivation prong: (1) whether 'the agents' decision to seek the warrant was prompted by what they had seen during the initial entry,' and (2) whether 'the agents would have sought a warrant if they had not earlier entered the warehouse.'"[26] While Pietz advocates for one articulation of the standard, Miles allows for either. This court did not incorrectly articulate the standard in its order dismissing Pietz's PRP.

Pietz also asserts that this court cannot make the factual finding the motivation prong requires. Similar to Murray, here, the trial court did not make a

---

[23] Miles, 159 Wn. App. at 284.
[24] 159 Wn. App. 282, 244 P.3d 1030 (2011).
[25] Miles, 159 Wn. App. at 298.
[26] Miles, 159 Wn. App. at 296 (quoting Murray, 487 U.S. at 542-43).

finding about whether Mellis would have sought a warrant if he had not seen the sticky note or the bracelet. The State contends that because Mellis was in the process of seeking a warrant before he saw the bracelet, "it is inconceivable that he would not have sought a warrant after learning that a [sticky] note confirming an appraisal of a bracelet was in the boxes when the dead victim's bracelet was still missing and such evidence could establish that Pietz had that bracelet after Nicole's murder." But "[t]he function of ultimate fact finding is exclusively vested in the trial court."[27] And Murray holds that application of the independent source exception to the exclusionary rule requires that a trial court make an explicit finding that the officer would have sought a warrant regardless of the unlawful search or seizure. We remand with instruction to the trial court to consider the limited issue of whether Mellis would have sought a warrant even if he had not seen the sticky note or the bracelet.

Ineffective Assistance of Appellate Counsel

Last, Pietz asserts that his appellate counsel provided ineffective assistance because he did not raise suppression of the sticky note and bracelet on appeal.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to effective

---

[27] Edwards v. Morrison-Knudsen Co., 61 Wn.2d 593, 598, 379 P.2d 735 (1963).

assistance of counsel to help ensure a fair trial.[28]  This includes the right to effective assistance of counsel on a defendant's first appeal of right.[29]  "In order to prevail on an appellate ineffective assistance of counsel claim, petitioners must show that the legal issue which appellate counsel failed to raise had merit and that they were actually prejudiced by the failure to raise or adequately raise the issue."[30]  If a defendant submitting a PRP meets this burden, then he has necessarily met his burden to show a constitutional error that caused actual prejudice.[31]  Counsel's performance is not deficient for failing to object to admissible evidence.[32]  Because the trial court must make a factual finding on remand related to the admissibility of the sticky note and bracelet, we cannot resolve Pietz's ineffective assistance claim in this PRP.  But if the trial court decides Mellis would have sought a warrant regardless of any allegedly unlawful search, making the independent source exception to the exclusionary rule applicable, Pietz's appellate counsel was not ineffective for not challenging the admission of admissible evidence.

---

[28] See State v. Grier, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011); see also State v. Coristine, 177 Wn.2d 370, 375, 300 P.3d 400 (2013).

[29] In re Pers. Restraint of Dalluge, 152 Wn.2d 772, 787, 100 P.3d 279 (2004).

[30] In re Pers. Restraint of Maxfield, 133 Wn.2d 332, 344, 945 P.2d 196 (1997).

[31] In re Pers. Restraint of Crace, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012).

[32] Grier, 171 Wn.2d at 32.

CONCLUSION

We remand this case to the trial court for a reference hearing to resolve the limited issue of whether Mellis would have sought a search warrant regardless of his alleged unlawful search of the sticky note and bracelet.

_Leach, J._

WE CONCUR:

_Mann, ACJ_                    _Dwyer, J._